Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

**23SL-CC00702**

## IN THE CIRCUIT COURT OF
## ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| ANKENETH CORBIN, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No.: |
| | ) | |
| v. | ) | |
| | ) | Division: |
| BLACK JACK FIRE | ) | |
| PROTECTION DISTRICT, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DAVID CALHOUN, | ) | |
| *in his individual capacity,* | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |
| | ) | |
| Serve both Defendants at: | ) | |
| 5675 North Highway 67 | ) | |
| Florissant, MO 63034 | ) | |

### PETITION FOR DAMAGES

Plaintiff Ankeneth Corbin ("Plaintiff" or "Chief Corbin"), by and through undersigned counsel, and for his Petition for Damages, states as follows herein.

### PARTIES AND VENUE

1.    Defendant Black Jack Fire Protection District (the "Fire District") is a public entity situated in St. Louis County, Missouri.

2.    Defendant David Calhoun ("Chairman Calhoun" or "Calhoun") is an official employed by the Fire District as Chairman and Director of the Board, and, in that capacity, conducted business and operations in St. Louis County at all relevant times herein.

3.    Plaintiff is a citizen residing in St. Louis County, Missouri.

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

4.    The Fire District employed Plaintiff within St. Louis County, where it conducts operations and where the actions giving rise to the instant Petition took place.

5.    Venue is therefore appropriate in the St. Louis County, including pursuant to Rule 508.010 and MO Rev. Stat. § 105.055.

6.    This action is authorized and instituted pursuant to, *inter alia*, 42 U.S.C. § 1983, 42 U.S.C. § 1981, MO Rev. Stat. § 105.055, and via Missouri common law.

7.    Defendants acted under color and authority of the state; at all times pertinent to the allegations of this Petition, Defendant Calhoun was Plaintiff's supervisor and was acting under color of state law.

8.    Plaintiff was a public employee for purposes of all authority cited herein.

9.    At times pertinent to the allegations of this Petition, Defendants were involved in depriving Plaintiff of his constitutional and statutory rights and discriminating, harassing, and retaliating against Plaintiff.

10.    Plaintiff demands a trial by jury on all issues so triable in this case.

## FACTS COMMON TO ALL COUNTS

### Overview of Plaintiff's Employment

11.    Plaintiff began working for the Fire District on November 3, 2010.

12.    The City of Black Jack, Missouri contracts fire protection to the Fire District.

13.    Mo. Rev. Stat. § 321.010 *et. seq.* governs the operation of a fire district, and provides for elected directors.

14.    Plaintiff was promoted to Fire Chief in 2015, reporting to the Board of Directors and Chairman Calhoun.

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

15.     Prior to being made Chief, Plaintiff had accumulated stellar qualifications over a lifetime of public service and had demonstrated strong leadership qualities.

16.     Plaintiff was the first African American Fire Chief in the Fire District, and one of few African American employees overall.

17.     During Plaintiff's tenure as Fire Chief, he took pride in the community he served, and implemented multiple programs and services to help the citizens of the district.

18.     At all times, Plaintiff performed his job duties at or above expectations and, prior to the pre-termination suspension discussed *infra,* was never disciplined or issued written counseling.

19.     Plaintiff was employed pursuant to an employment contract executed on or about January 14, 2020 (the "Agreement").

20.     Plaintiff bargained for an employment contract in part to remedy a salary situation wherein six lower-ranking employees were making less money than Plaintiff.

21.     The Agreement was executed despite Calhoun telling Plaintiff, "You ain't getting no contract," which was said in the context of Plaintiff requesting higher compensation commensurate with his position, and presenting statistical data showing the compensation of other area Fire Chiefs managing comparably sized districts.

22.     The Agreement is silent as to the grounds required for termination.

23.     Like all Missouri contracts, the Agreement imposes on the parties and duty of good faith and fair dealing.

24.     Plaintiff received a salary of $170,000 per year, health coverage, retirement benefits, the use of an automobile, and other benefits, all of which he has now been illegally deprived of.

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

**Rampant Ethical Violations of Chairman Calhoun and the Fire District, Repeatedly
Complained About by Plaintiff**

25.    Throughout his employment, Plaintiff was very outspoken about the fiduciary responsibilities and ethical standards he and others—including Chairman Calhoun—were bound by.

26.    Plaintiff's high ethics and complaints about ethics abuses caused animosity on the part of Calhoun and other Board Members.

27.    Plaintiff's complaints about ethics violations touched upon matters of public concern and highlighted illegalities on the part of the Board and Calhoun.

28.    Plaintiff stepped beyond the scope of his duties and role as Fire Chief in making his various complaints.

29.    Plaintiff complained about misuse of public funds for trips taken to locations such as Las Vegas, Branson, and Atlanta by Calhoun and Board Members at various times.

30.    Chairman Calhoun would routinely ask contractors of the Fire District for baseball tickets and other benefits; Plaintiff complained about this to the Board, but no action was taken.

31.    In 2018, Chairman Calhoun attempted to use Plaintiff for a scheme in which he would obtain health benefits for himself, as described in the Paragraphs 32-34 below.

32.    Plaintiff had initially signed a document in 2016 and 2017 that allowed Board of Directors to receive health insurance under a grandfathered plan with the understanding that the Fire District would move to a compliant Affordable Care Act plan and avoid penalties.

33.    In 2018, when Plaintiff was asked to sign a document that would've cost the Fire District an additional $178,000 and a 25% increase to remain in a non-compliant plan, but refused.

34.     Chairman Calhoun signed for the health insurance plan for himself, on or about September 4, 2018, over Plaintiff's objections and against the recommendation of a risk management specialist.

35.     Calhoun routinely showed up at the fire house 3-4 times per week, which was disruptive and inappropriate.

36.     Chairman Calhoun would routinely use firefighters to carry out his personal business during working hours, such as washing his car or running errands (such as traveling 40 minutes to give Calhoun a COVID shot when shots were provided at the fire house).

37.     Chairman Calhoun directed Plaintiff on multiple occasions to arrange for Calhoun to receive a decommissioned fire department vehicle at taxpayer expense, trying to intimidate Plaintiff into capitulating.

38.     Plaintiff refused to engage in the illegal and unethical act of providing Chairman Calhoun with a vehicle at taxpayer expense.

39.     Calhoun admitted to this intimidating conduct over getting a taxpayer funded personal vehicle multiple times in a conversation with Plaintiff, including an audio recorded admission on March 3, 2022.

40.     In a letter to the Board dated September 7, 2021, requesting an independent third party review and investigation, Plaintiff stated, in part:

> "…after agreeing to purchase new staff vehicles in a board meeting, I was working out in the basement when Mr. Calhoun still in his work clothes approached me … **He specifically said that he wanted one of the vehicles for himself and his family but did not want to pay a lot for it and asked if I could arrange that which is highly inappropriate. He subsequently became annoyed during a later board meeting at my refusal to recommend that we sell the vehicles via bid** rather than trading them in and insisted that I give a recommendation. I replied that the board should make that decision on whether to trade the vehicles in or sell them via bid process. Mr. Calhoun called me the following Monday … He said yes meet me in your office … topic of conversation

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

was the selling of staff vehicles and **insisted that I agreed to make that happen and had reneged on the deal** in the previous board meeting." (emphasis added)

41.     In his September 7, 2021 letter, Plaintiff also reported intimidation from Calhoun because Plaintiff allegedly arranged for someone to run against Calhoun in a recent election, even though Calhoun had in fact run unopposed.

42.     On November 23, 2021, the Board dismissed further consideration of the allegations in the letter.

43.     Upon information and belief, no serious investigation was ever conducted by the Board with respect to any protected complaints made by Plaintiff described herein.

44.     Plaintiff filed a complaint with the Missouri Ethics Commission on January 28, 2022, about much of the foregoing; upon hearing about the complaint, Calhoun stated, "You hate me because you can't do nothing to me."

45.     Mo. Rev. Stat. § 105.452(3) provides that no public official shall, "*Favorably act on any matter that is so specifically designed so as to provide a special monetary benefit to such official or his spouse or dependent children, including but not limited to increases in retirement benefits, whether received from the State of Missouri or any third party by reason of such act.*"

46.     Chairman Calhoun and other Board Members are public officials for purposes of Mo. Rev. Stat. § 105.452(3).

**Evidence of Retaliatory, Racial, and Age-Based Animus Against Plaintiff**

47.     Prior to becoming Chief, Plaintiff had been subjected to occasional stray remarks evidencing racial animus by the prior Chief, such as being told, "You don't know your place" and that he was "too big for his britches" (later characterized by Plaintiff as, "a reference to a negro or black person who doesn't know his place and needs to be broken"); he was also told by a co-worker that he was "quite the cocksman."

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

48.     Plaintiff was told, "You just think you can do what the fuck you wanna do around here" by Calhoun.

49.     Plaintiff was viewed by Defendants as being too assertive for a Black man, and as not being acquiescent or submissive enough to white leadership on the Board and/or white citizenship in Black Jack.

50.     Treasurer Kenneth Schmalbeck told Plaintiff that the Board felt like Plaintiff needed his "hand slapped"; this was in the aftermath of the comments about being "too big for (his) britches" and not "knowing (his) place"; at that time, two of the three Board members were white.

51.     On various occasions, Plaintiff was personally, profanely and angrily attacked verbally by Chairman Calhoun; this would not have occurred but for Plaintiff's protected activity and/or Plaintiff's race.

52.     Although Calhoun is also African American, upon information and belief, he was motivated to discriminate against Plaintiff on the basis of Plaintiff's race in order to leverage and validate his own power, to curry the favor of white employees/Board members/voters, and/or due to complex psychological reasons.

53.      "Black on Black" racism is a well-recognized phenomena in sociological, political, and psychological literature, as well as in jurisprudence: indeed, as Judge Sippel ruled in Belton v. Shinseki, 2009 WL 2488025 (E.D.Mo. 2009), "the VA's argument that Belton could not have experienced racial discrimination because her supervisor is also African–American is wrong as a matter of law, requiring me to deny the VA's motion for judgment as a matter of law."

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

54.     On October 2, 2018, Director Adler, who is white, received an anonymous letter referring to Plaintiff as the "Nigger Fire Chief," and requested firefighters and others come to the boardroom to hear the contents, which he then read aloud.

55.     Adler intended to humiliate Plaintiff and in fact did humiliate Plaintiff.

56.     After reading the letter, Adler asked Plaintiff, "Do you think I'm a racist piece of bigot shit and I had something to do with this?"

57.     When Plaintiff asked Adler why Adler would ask that, Adler replied, "Because you're the big cheese."

58.     A second anonymous letter arrived and Adler again read it aloud, demanding others come into a room for his recitation.

59.     Adler asked Plaintiff if Plaintiff wanted to read the second letter, to which Plaintiff asked why Adler thought Plaintiff would want to do that after Adler had a read a letter with the "N" word last time.

60.     Adler replied—mimicking a Black urban dialect—"because you have the pulse of the people, man."

61.     Plaintiff was denied training opportunities due to his race and/or protected activities.

62.     In 2018, white employees were allowed to use public funds to bring their wives while Black employees were not; Plaintiff was excluded from this trip.

63.     Plaintiff was denied leadership training opportunities while other members were approved; others later declined said opportunities in protest of Plaintiff's treatment.

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

64.     Among other indignities related to his race and/or protected activities, Plaintiff was stripped of the access to the Fire Chief's vehicle and forced to drive a decommissioned staff vehicle with high mileage and less mechanical dependability with no explanation given.

65.     Plaintiff was treated less favorably than the previous Fire Chief and the Assistant Fire Chief, who were Caucasian and who did not engage in protected whistleblower activity or protected speech.

66.     For example, Plaintiff was not allowed to submit recommendations for the last captains' promotions, which was part of the agreement with the Board and in Plaintiff's duties and job description.

67.     Via correspondence dated November 8, 2021, engaging in protected activity, Plaintiff alleged he was being racially discriminated against by Calhoun and the Fire District; the Board dismissed this complaint as of January 24, 2022.

68.     During a time of race-related civil unrest in the community, he was accused of receiving unapproved compensation, which had in fact been approved by the Board, as was quickly determined.

69.      Plaintiff was repeatedly asked about his retirement plans and significant pressure was applied to him by Chairman Calhoun with regard to how soon he was going to retire.

70.     In contrast, Chief Gantner, who is white, was offered an extension past the age of 60 and was under no such retirement pressure.

71.     Calhoun and the Board deliberately precluded extension of the mandatory retirement age from 62 due to illegal animus against Plaintiff; indeed, another retiring employee stated, "If it weren't for you fighting with him (Plaintiff), I wouldn't have to retire."

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

72.     Retired Battalion Chief Thomas Torminio and other Labor and Pension Committee Members indicated that the retirement age would've changed as requested, but the Board was tired of Plaintiff and wanted him gone.

73.     If not for illegal animus against Plaintiff, retirement age would have been extended.

74.     Plaintiff is entitled to lost wages and benefits accruing past the age of 62.

**Plaintiff's Continued Protected Activity and Subsequent Retaliation, Including Calhoun's Ongoing Efforts to Have Plaintiff Removed**

75.     On or about July 19, 2022, Plaintiff filed a charge of discrimination with the EEOC and MCHR alleging retaliation and discrimination due to race, color, and age (thereafter amended an August 29).

76.     In his charge Plaintiff also referenced retaliation due to whistleblowing activities.

77.     Defendants received prompt notification of Plaintiff filing his Charge and its contents.

78.     Defendants were made aware that Plaintiff was, in 2021-2022, re-raising a number of prior, critical incidents regarding corruption and discrimination, including but certainly not limited to, his 2017 complaint about Calhoun pressuring vendors for perks, his 2018 complaints about the health insurance issue, and the "nigger fire chief" incident.

79.     After the filing of Plaintiff's Charge of Discrimination, Chairman Calhoun made efforts to get the Union to issue a vote of "no confidence" on Plaintiff in order to have Plaintiff removed as Chief.

80.     Calhoun showed Plaintiff's EEOC/MCHR charge to Battalion and Chief Dave Schmidt as part of these efforts.

81.     Chairman Calhoun said Plaintiff was trying to "ruin the place" and was trying to "destroy the department" by going to the media, which was not true.

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

82.     During the running of a bond issue, a contractor, Videographer Raymond Kemp, contacted Plaintiff on the morning of Saturday, September 3, 2022, saying, "I got a strange phone call from David Calhoun, asking for receipts for the video. This guy is looking for something against you"; Kemp went on to say that Calhoun called Kemp on several occasions looking for something to use against Plaintiff.

83.     When Kemp copied Plaintiff on a reply to Calhoun, Calhoun responded to Kemp (verbally), "I guess I see whose side you're on"; Kemp relayed this conversation to Plaintiff and indicated he did not appreciate getting a call like that from Calhoun.

84.     Kemp noted he had dealt with fire chiefs for over two decades and had never had a board member contact him personally.

85.     On more than one occasion, Chairman Calhoun tried to intimidate Plaintiff by stating, "you can't do anything to me because I'm an elected official" or words to that effect.

86.     Plaintiff began to suffer symptoms of intense emotional distress, anxiety, and night terrors, and was ultimately diagnosed with Post Traumatic Stress Disorder (PTSD).

87.     Plaintiff came to believe that Chairman Calhoun was coming into Plaintiff's office and going through his personal effects, rifling through his cabinets and drawers.

88.     Plaintiff put a camera in his office, which confirmed his suspicion that Chairman Calhoun was indeed invading his privacy.

89.     Plaintiff had every right and authority as Chief to have a camera in his office.

90.     On December 6, 2022, Plaintiff attended a closed session board meeting as previously instructed by the Board of Directors of the Fire District.

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

91.     During this meeting district a Fire District attorney attempted to intimidate Plaintiff by insinuating that Plaintiff had possibly violated a Missouri law, despite Missouri being a one-party consent state.

92.     Plaintiff repeated several times during this meeting that he was extremely uncomfortable that the board would pursue personnel action against him while an active EEOC/MCHR investigation was still pending.

93.     The Fire District attorney stated that they weren't there to talk about the EEOC complaint or the investigation, or Plaintiff's allegations of retaliation following his filing of the charge.

94.     On a prior occasion, in circa 2019, the same attorney had made a comment to Plaintiff, who had then received a Right to Sue notice from EEOC/MCHR, to the effect that the threat of a lawsuit over the heads of the Board of Directors would have a chilling impact on them.

95.     The Board of Directors was unconcerned about a supervisor going through Plaintiff's personal workspace and drawers, or the recorded conversation between Plaintiff and Chairman Calhoun where Calhoun admitted that he directed Plaintiff on multiple occasions to arrange for him to receive a decommission fire department vehicle.

96.     The Board was also unconcerned that Mr. Calhoun showed Plaintiff's EEOC complaint to Battalion Chief Dave Schmidt and attempted to have labor members file the vote of "no confidence" against Plaintiff as Fire Chief.

97.     The meeting ended with Plaintiff being visibly upset and anxious. He asked the Assistant Chief Roger Ellison to take his blood pressure and it was extremely high (192/122, vs a normal range of 130/72).

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

98.     Plaintiff returned to the board room while they were still meeting and informed them that he would need to seek prompt medical treatment.

**The Discriminatory and Retaliatory Termination of Plaintiff**

99.     On December 27, 2022, Plaintiff, as he was beginning a vacation, was visited at his house by Chairman Calhoun and the Assistant Chief Roger Ellison.

100.     During that meeting, Plaintiff was suspended by the Fire District—ostensibly for installing a camera in his own office—and ordered to surrender his car, phone, computer devices, and credit cards.

101.     The Fire District had never before asked for the return of electronic devices of any suspended employee in the past.

102.     Plaintiff had not been subjected to any progressive discipline leading up to the suspension and had not, during his career, received written discipline.

103.     There is no Fire District rule or regulation prohibiting recording in an employee's office.

104.     As soon as practicable, Plaintiff returned all items requested upon his suspension or had left them in his office, but was baselessly accused of not returning a laptop; Plaintiff had no such laptop in his possession—indeed, video captured by Plaintiff demonstrates that during nonworking areas, it is left closed on Plaintiff's desk.

105.     Plaintiff notified Defendants after suspension that might need medical leave for reasons of intense anxiety and depression; Defendants requested medical documentation by January 17, which Plaintiff, in good faith, made every effort to obtain.

106.     Plaintiff was terminated on January 17 at a Board meeting; the pretextual reasons given in a January 18 letter were the alleged retention of a laptop during suspension, using a

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

recording device in his office, and not yet having received Plaintiff's physician letter regarding his mental health status (which the physician's office was unable to produce until January 18).

107.     As stated above, Calhoun had made many efforts to have Plaintiff removed prior to the in-office recording or suspension ever taking place; clearly, the sated reasons for termination are not the true reasons for termination.

108.     As Plaintiff was indefinitely suspended, the timeliness of his medical request was irrelevant and, in any event, would not constitute misconduct under any circumstances.

109.     Unlike other similarly situated employees who were separated from employment (including the preceding Chief), Plaintiff was not offered severance, a buy-back of earned PTO time, or other benefits at separation.

110.     Although the Board had knowledge of Calhoun's toxic, retaliatory, and discriminatory behavior, they never took steps to remedy it, despite the Fire District's policy stating, "Any form of retaliation against an individual for filing a bona fide complaint under this policy or for assisting in an investigation is expressly prohibited and will not be tolerated."

111.     Plaintiff has suffered, and will continue to suffer, significant economic losses, psychological trauma, and other damages as a result of the actions of Defendants, including but not limited to lost wages, lost retirement and health benefits, damage to his reputation, emotional distress, physical disturbances, damage to his career trajectory and future earnings, loss of standing in the community, and various material benefits of his employment.

112.     Defendants acted knowingly and with malice and evil motive.

113.     Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendants for their reprehensible conduct and to deter others from acting in a similar matter.

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

114.     As a consequence of Defendants' actions as described herein, Plaintiff has lost, and continues to lose, wages and other financial incidents and benefits.

115.     As a consequence of Defendants' actions as described herein, Plaintiff has experienced severe emotional distress, embarrassment, and a loss of reputation.

116.     As a consequence of Defendants' actions as described herein, Plaintiff has incurred, and will continue to incur, attorney's fees, costs, and expenses.

## COUNT I - RETALIATION/ILLEGAL DISCHARGE IN VIOLATION OF MO. REV. STAT. § 105.055

### *(Against Defendant Fire District)*

117.     Plaintiff hereby incorporates by reference all preceding Paragraphs.

118.     Plaintiff was retaliated against for speaking out against the Chairman Calhoun and the Board for making policy and procedures modifications for a single individual, reporting conflicts of interest, fiscal irregularities, wasteful spending, and other malfeasance.

119.     MO Rev. Stat. § 105.055 (3.)(1)(a)-(b) provides that a state employee may not be retaliated against ("any disciplinary action whatsoever") for disclosing any alleged protected activity under investigation or disclosing information the employee *reasonably believes* evidences a violation of any law, rule, or regulation, or for disclosing:

        a.   mismanagement,

        b.   gross waste of funds,

        c.   abuse of authority,

        d.   violation of policy,

        e.   waste of public resources,

        f.   breaches of professional ethical canons, or

        g.   danger to public health and safety.

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

120.     Plaintiff reported mismanagement or gross waste of funds, abuse of authority, violation of policy, waste of public resources, and other protected misconduct under the statute.

121.     Plaintiff reported serious misconduct to his employer which was in violation of clear mandates of public policy, as articulated by statutes and regulations cited herein, and refused to carry out directions to violate said policy.

122.     Said policy, for the prevention of fraud, self-dealing, breach of fiduciary duties, and dishonest practices on the part of public officials, is articulated in Missouri statutes, including but not limited to Mo. Rev. Stat. § 105.452(3).

123.     Defendant stepped out of the scope of his defined responsibilities and routine job duties in his complaints.

124.     Plaintiff was illegally discharged and retaliated against by Defendant due to his complaints about specific fraud, dishonest practices, and other proscribed conduct under the statute being perpetrated by Defendant.

125.     Plaintiff's protected activity played a role in the termination and had a determinative influence.

126.     Upon a showing that Plaintiff engaged in protected activity by clear and convincing evidence, Defendant will not be able to carry its burden of showing disciplinary action was not the result of Plaintiff's protected activity.

127.     Plaintiff's termination was clearly pretextual and illegal.

WHEREFORE, Plaintiff respectfully requests judgment, pursuant to verdict by jury, in his favor in an amount that is fair and reasonable for actual damages, back pay, reinstatement, front pay, liquidated damages, interest on damages, for his attorney's costs and fees, and for such other and further relief to which the Court deems just and proper.

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

**COUNT II – RETALIATION,**
**AGAINST FIRST AMENDMENT PROTECTED ACTIVITY, AND**
**IN VIOLATION OF THE FOURTEENTH AMENDMENT PROTECTIONS**
**OF EQUAL PROTECTION AND DUE PROCESS**
**UNDER THE U.S. CONSTITUTION / 42 U.S.C § 1983**

*(Against both Defendants)*

128.    Plaintiff hereby incorporates by reference all preceding paragraphs.

129.    Both Defendants are a "person" for purposes of Section 1983.

130.    Defendants abused the power given to them by the state.

131.    The actions taken by individual Defendants was taken in their individual capacity while acting under color of state law, were afforded to them by virtue of state law and made possible only because Defendants were clothed with the authority of state law.

132.    By the acts described above, and in violation of 42 U.S.C § 1983 and US Constitution, Defendants, agents of the state, unlawfully deprived Plaintiff of his rights under the First Amendment of the U.S. Constitution and terminated him specifically for speech of a public nature and of interest to the public, including the corruption of public officials, misuse of funds, and other misdeeds, as set forth above.

133.    Section 1 of the Fourteenth Amendment provides, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

134.    Plaintiff spoke out against matters of public corruption, mismanagement, and waste—stepping out of his assigned job duties and role to do so—and was terminated and otherwise retaliated against because of it.

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

135.    Plaintiff also complained of race and age discrimination, which he reasonably believed to be valid.

136.    Plaintiff's speech regarding public corruption, waste, and mismanagement was protected by the First Amendment and other Constitutional provisions.

137.    Plaintiff's speech regarding race and age discrimination was protected by the Equal Protection Clause of the Fourteenth Amendment and other Constitutional provisions.

138.    Plaintiff was deprived of rights, privileges and immunities.

139.    Defendants conduct adversely effected Plaintiff's speech.

140.    A causal link exists between Plaintiff's speech and adverse acts suffered by Plaintiff, including termination of employment.

141.    Defendants abused powers given to them by the state and under color of state law.

142.    The actions taken by individual Defendant Calhoun was taken in his individual capacity while acting under color of state law, was afforded to him by virtue of state law and made possible only because Defendants were clothed with the authority of state law.

143.    The conduct of Defendants was outrageous and willfully undertaken with reckless disregard for Plaintiff's rights.

WHEREFORE, Plaintiff respectfully requests judgment, pursuant to verdict by jury, in his favor in an amount that is fair and reasonable for actual damages, back pay, front pay/reinstatement, punitive damages, emotional distress damages, interest on damages, for his attorney's costs and fees, and for such other and further relief to which the Court deems just and proper.

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### *(Against Defendant Calhoun)*

144.     Plaintiff incorporates by reference all preceding Paragraphs

145.     As set forth above, Defendant Calhoun, abusing his position of power and authority, engaged in extreme and outrageous conduct that resulted in great emotional distress and psychological harm to Plaintiff's person.

146.     Defendant's insensitive and cruel conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

147.     Defendant Calhoun's conduct was extreme and outrageous.

148.     Defendant Calhoun acted intentionally or recklessly.

149.     Defendant Calhoun's conduct caused severe emotional distress in Plaintiff, to the point of manifesting as bodily harm, and said mental injury is medically diagnosable and significant.

WHEREFORE, Plaintiff respectfully requests judgement, pursuant to verdict by jury, in his favor in an amount that is fair and reasonable for actual damages, punitive damages, emotional distress damages, interest on damages, for his attorney's costs and fees, and for such other and further relief to which the Court deems just and proper, in an amount to be determined, but in excess of $25,000.

## COUNT IV – AGE DISCRIMINATION, IN VIOLATION OF SECTION 1983

### *(Against both Defendants)*

150.     Plaintiff incorporates by reference all preceding paragraphs.

151.     Age discrimination in employment violates the Equal Protection Clause of the United States Constitution (14th Amendment) and Due Process provisions.

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

152.    Plaintiff's termination from employment was motivated by his age, 58.

153.    Said discrimination was not rationally related to a legitimate state interest.

154.    The ADEA does not preclude an action for age discrimination under Section 1983. See, e.g., Mummelthie v. City of Mason City, IA, 873 F.Supp. 1293 (N.D. Iowa 2011); Levin v. Madigan, 692 F.3d 607 (7th Cir. 2012); Mustafa v. State of Nebraska Dept. of Corr. Servs., 196 F.Supp.2d 945 (D.Neb. 2002).

155.    In this regard, the rights under 1983 are particularly distinct from ADEA rights in the instant matter where the ADEA expressly limits or exempts claims by certain individuals, including elected officials and certain members of their staff, appointees, law enforcement officers, and firefighters. See 29 U.S.C. 623(j), 630(f).

156.    The facts alleged give rise to an independent federal right secured by the U.S. Constitution.

157.    Both Defendants are a "person" for purposes of Section 1983.

158.    Defendants abused the power given to them by the state.

159.    Plaintiff was denied due process and equal protection.

160.    A causal nexus exists between Plaintiff's age and adverse actions taken against him, including termination from employment.

161.    The actions taken by individual Defendant Calhoun was taken in his individual capacity while acting under color of state law, was afforded to him by virtue of state law and made possible only because Defendants were clothed with the authority of state law.

### COUNT V – RETALIATION, IN VIOLATION OF 42 U.S.C. § 1981

#### *(Against both Defendants)*

162.    Plaintiff incorporates by reference the above paragraphs as if fully set forth herein.

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

163.    Plaintiff's protected activity, as described herein, was a "but for" factor in his termination.

164.    The purported reasons for Plaintiff's termination were not based in fact and were pretext for unlawful retaliation.

165.    Plaintiff reported the reported the harassment and race-based wrongful, discriminatory, and retaliatory conduct committed by his supervisors and others, however, nothing was done to stop the ongoing harassment, intimidation, and retaliation.

166.    Defendants, by the actions described herein, retaliated against Plaintiff due to his protected activity of protesting racial discrimination and/or harassment.

167.    A causal connection exists between Plaintiff's termination and his protected activity.

168.    The Defendants' behavior violated 42 U.S.C. § 1981

169.    Defendants' conduct was outrageous due to their evil motive and reckless disregard for Plaintiff's rights thereby entitling him to punitive damages in an amount that will punish Defendants and will deter Defendants and others from like conduct.

WHEREFORE, Plaintiff requests a jury trial and that this Court enter judgment in his favor and against Defendants, declaring that Defendants have engaged in unlawful employment practices with respect to Plaintiff in violation of his rights protected by the Section 1981; that Plaintiff be reinstated and compensated for all losses and damages suffered as a result of Defendants' unlawful discharge, including, but not limited to, past and future lost income, hedonic damages, emotional distress damages, other lost financial benefits of employment, and an amount to compensate Plaintiff for any tax treatment of a damages award (if reinstatement is not a practical or possible remedy then front pay should be awarded); that Defendants be ordered to pay punitive

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

damages; that Plaintiff be awarded pre-judgment and/or post-judgment interest on his damages; that Plaintiff be awarded attorneys' fees and costs reasonably expended on this case; and further relief as this Court deems appropriate under the circumstances.

### COUNT VI – RACE DISCRIMINATION, IN VIOLATION OF 42 U.S.C. § 1981 AND 42 U.S.C. § 1983

### *(Against both Defendants)*

170.  Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

171.  The termination of Plaintiff – an adverse employment action – was motivated by his race.

172.  "But for" his race, Plaintiff would not have been terminated.

173.  Similarly situated employees were treated more favorably than Plaintiff.

174.  Defendants, by the actions described herein, discriminated against Plaintiff due to his race in violation of his Constitutional guarantees of Equal Protection, as enforced via 42 U.S.C. § 1981.

175.  Section 1981 was originally passed as part of the Civil Rights Act of 1866 to protect newly freed slaves and their descendants by guaranteeing them the same rights enjoyed by white citizens.

176.  Section 1981(a) provides that "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens…"

177.  Race-based discrimination against Plaintiff further violated Plaintiff's constitutional rights of due process and equal protection, as enforced under 42 U.S.C. § 1983.

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

178.     The explanations offered by Defendants are demonstrably pretextual.

179.     As a consequence of Defendants' actions as described herein, Plaintiff has lost, and continues to lose, wages and other financial incidents and benefits.

180.     As a consequence of Defendants' actions as described herein, Plaintiff has experienced severe emotional distress, embarrassment, and a loss of reputation.

181.     As a consequence of Defendants' actions as described herein, Plaintiff has incurred, and will continue to incur, attorney's fees, costs, and expenses.

182.     The conduct of Defendants was outrageous and willfully undertaken with reckless disregard for Plaintiff's rights.

WHEREFORE, Plaintiff requests a jury trial and that this Court enter judgment in his favor and against Defendants, declaring that Defendants have engaged in unlawful employment practices with respect to Plaintiff in violation of his rights protected by Section 1981; that Plaintiff be reinstated and compensated for all losses and damages suffered as a result of Defendants' unlawful discharge of him, including, but not limited to, past and future lost income, hedonic damages, emotional distress damages, other lost financial benefits of employment, and an amount to compensate Plaintiff for any tax treatment of a damages award (if reinstatement is not a practical or possible remedy then front pay should be awarded); that Defendants be ordered to pay punitive damages; that Plaintiff be awarded pre-judgment and/or post-judgment interest on his damages; that Plaintiff be awarded attorneys' fees and costs reasonably expended on this case; and further relief as this Court deems appropriate under the circumstances.

Electronically Filed - St Louis County - February 14, 2023 - 06:50 PM

Respectfully Submitted,

HKM EMPLOYMENT ATTORNEYS, LLP

 */s/ Jeffrey D. Hackney*
Jeffrey D. Hackney
Missouri Bar No. 53158
HKM Employment Attorneys, LLP
7382 Pershing Ave., Suite 1W
St. Louis, Missouri 63130
*Telephone: 314-207-7135*
*E-Mail: jhackney@hkm.com*

**Attorneys for Plaintiff Ankeneth Corbin**