## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

ANKENETH CORBIN,          )
                                     )
             Plaintiff,          )
                                     )     Cause No.: 4:23-cv-00516-JAR
v.                                   )
                                     )
BLACK JACK FIRE PROTECTION       )     Jury Trial Demanded
DISTRICT and DAVID CALHOUN,       )
                                     )
            Defendants.       )

## DEFENDANTS BLACK JACK FIRE PROTECTION DISTRICT'S AND DAVID CALHOUN'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S PETITION FOR DAMAGES

COME NOW Defendants Black Jack Fire Protection District ("District") and David Calhoun ("Calhoun") (the District and Calhoun are collectively referred to herein as "Defendants"), by and through counsel, and for their Answer and Affirmative Defenses to Plaintiff's Petition for Damages ("Petition"), state the following:

## PARTIES AND VENUE

1.     Defendant Black Jack Fire Protection District (the "Fire District") is a public entity situated in St. Louis County, Missouri.

**ANSWER:    Admitted.**

2.     Defendant David Calhoun ("Chairman Calhoun" or "Calhoun") is an official employed by the Fire District as Chairman and Director of the Board, and, in that capacity, conducted business and operations in St. Louis County at all relevant times herein.

**ANSWER:    The allegations in paragraph 2 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 2 of the Petition are construed as factual allegations, Defendants admit them.**

3.     Plaintiff is a citizen residing in St. Louis County, Missouri.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Petition, and, therefore, Defendants deny those allegations and demand strict proof thereof.

4. The Fire District employed Plaintiff within St. Louis County, where it conducts operations and where the actions giving rise to the instant Petition took place.

**ANSWER:** Admitted.

5. Venue is therefore appropriate in the St. Louis County, including pursuant to Rule 508.010 and MO Rev. Stat. § 105.055.

**ANSWER:** The allegations in paragraph 5 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 5 of the Petition are construed as factual allegations, Defendants deny them.

6. This action is authorized and instituted pursuant to, *inter alia*, 42 U.S.C. § 1983, 42 U.S.C. § 1981, MO Rev. Stat. § 105.055, and via Missouri common law.

**ANSWER:** The allegations in paragraph 6 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 6 of the Petition are construed as factual allegations, Defendants deny them.

7. Defendants acted under color and authority of the state; at all times pertinent to the allegations of this Petition, Defendant Calhoun was Plaintiff's supervisor and was acting under color of state law.

**ANSWER:** The allegations in paragraph 7 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 7 of the Petition are construed as factual allegations, Defendants deny them.

8. Plaintiff was a public employee for purposes of all authority cited herein.

**ANSWER:** The allegations in paragraph 8 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 8 of the Petition are construed as factual allegations, Defendants admit them.

9. At times pertinent to the allegations of this Petition, Defendants were involved in depriving Plaintiff of his constitutional and statutory rights and discriminating, harassing, and retaliating against Plaintiff.

**ANSWER: Denied.**

10. Plaintiff demands a trial by jury on all issues so triable in this case.

**ANSWER: Defendant admits that Plaintiff's Petition purports to demand a trial by jury on all issues so triable in this case.**

### FACTS COMMON TO ALL COUNTS
### Overview of Plaintiff's Employment

11. Plaintiff began working for the Fire District on November 3, 2010.

**ANSWER: Admitted.**

12. The City of Black Jack, Missouri contracts fire protection to the Fire District.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Petition, and, therefore, Defendants deny those allegations and demand strict proof thereof.**

13. Mo. Rev. Stat. § 321.010 *et. seq.* governs the operation of a fire district, and provides for elected directors.

**ANSWER: The allegations in paragraph 13 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 13 of the Petition are construed as factual allegations, Defendants deny them.**

14. Plaintiff was promoted to Fire Chief in 2015, reporting to the Board of Directors and Chairman Calhoun.

**ANSWER: Admitted.**

15. Prior to being made Chief, Plaintiff had accumulated stellar qualifications over a lifetime of public service and had demonstrated strong leadership qualities.

**ANSWER: Denied.**

16. Plaintiff was the first African American Fire Chief in the Fire District, and one of few African American employees overall.

**ANSWER: Upon information and belief, Defendants admit only that Plaintiff was the first African American Chief in the Fire District. Defendants deny the remaining allegations contained in paragraph 16 of the Petition.**

17. During Plaintiff's tenure as Fire Chief, he took pride in the community he served, and implemented multiple programs and services to help the citizens of the district.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Petition, and, therefore, Defendants deny those allegations and demand strict proof thereof.**

18. At all times, Plaintiff performed his job duties at or above expectations and, prior to the pre-termination suspension discussed *infra,* was never disciplined or issued written counseling.

**ANSWER: Denied.**

19. Plaintiff was employed pursuant to an employment contract executed on or about January 14, 2020 (the "Agreement").

**ANSWER: Denied.**

20. Plaintiff bargained for an employment contract in part to remedy a salary situation wherein six lower-ranking employees were making less money than Plaintiff.

**ANSWER: Denied.**

21. The Agreement was executed despite Calhoun telling Plaintiff, "You ain't getting no contract," which was said in the context of Plaintiff requesting higher compensation commensurate with his position, and presenting statistical data showing the compensation of other area Fire Chiefs managing comparably sized districts.

**ANSWER: Denied.**

22. The Agreement is silent as to the grounds required for termination.

**ANSWER: Denied**

23. Like all Missouri contracts, the Agreement imposes on the parties and duty of good faith and fair dealing.

**ANSWER: The allegations in paragraph 23 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 23 of the Petition are construed as factual allegations, Defendants deny them.**

24. Plaintiff received a salary of $170,000 per year, health coverage, retirement benefits, the use of an automobile, and other benefits, all of which he has now been illegally deprived of.

**ANSWER: Denied.**

**Rampant Ethical Violations of Chairman Calhoun and the Fire District, Repeatedly Complained About by Plaintiff**

25. Throughout his employment, Plaintiff was very outspoken about the fiduciary responsibilities and ethical standards he and others—including Chairman Calhoun—were bound by.

**ANSWER: Denied.**

26. Plaintiff's high ethics and complaints about ethics abuses caused animosity on the part of Calhoun and other Board Members.

**ANSWER: Denied.**

27. Plaintiff's complaints about ethics violations touched upon matters of public concern and highlighted illegalities on the part of the Board and Calhoun.

**ANSWER: Denied.**

28. Plaintiff stepped beyond the scope of his duties and role as Fire Chief in making his various complaints.

**ANSWER:** The allegations in paragraph 28 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 28 of the Petition are construed as factual allegations, Defendants deny them.

29. Plaintiff complained about misuse of public funds for trips taken to locations such as Las Vegas, Branson, and Atlanta by Calhoun and Board Members at various times.

**ANSWER: Denied.**

30. Chairman Calhoun would routinely ask contractors of the Fire District for baseball tickets and other benefits; Plaintiff complained about this to the Board, but no action was taken.

**ANSWER: Denied.**

31. In 2018, Chairman Calhoun attempted to use Plaintiff for a scheme in which he would obtain health benefits for himself, as described in the Paragraphs 32-34 below.

**ANSWER: Denied.**

32. Plaintiff had initially signed a document in 2016 and 2017 that allowed Board of Directors to receive health insurance under a grandfathered plan with the understanding that the Fire District would move to a compliant Affordable Care Act plan and avoid penalties.

**ANSWER: Denied.**

33. In 2018, when Plaintiff was asked to sign a document that would've cost the Fire District an additional $178,000 and a 25% increase to remain in a non-compliant plan, but refused.

**ANSWER: Denied.**

34. Chairman Calhoun signed for the health insurance plan for himself, on or about September 4, 2018, over Plaintiff's objections and against the recommendation of a risk management specialist.

**ANSWER: Denied.**

35. Calhoun routinely showed up at the fire house 3-4 times per week, which was disruptive and inappropriate.

**ANSWER:    Denied.**

36. Chairman Calhoun would routinely use firefighters to carry out his personal business during working hours, such as washing his car or running errands (such as traveling 40 minutes to give Calhoun a COVID shot when shots were provided at the fire house).

**ANSWER:    Denied.**

37. Chairman Calhoun directed Plaintiff on multiple occasions to arrange for Calhoun to receive a decommissioned fire department vehicle at taxpayer expense, trying to intimidate Plaintiff into capitulating.

**ANSWER:    Denied.**

38. Plaintiff refused to engage in the illegal and unethical act of providing Chairman Calhoun with a vehicle at taxpayer expense.

**ANSWER:    Denied.**

39. Calhoun admitted to this intimidating conduct over getting a taxpayer funded personal vehicle multiple times in a conversation with Plaintiff, including an audio recorded admission on March 3, 2022.

**ANSWER:    Denied.**

40. In a letter to the Board dated September 7, 2021, requesting an independent third party review and investigation, Plaintiff stated, in part:

> "...after agreeing to purchase new staff vehicles in a board meeting, I was working out in the basement when Mr. Calhoun still in his work clothes approached me ... **He specifically said that he wanted one of the vehicles for himself and his family but did not want to pay a lot for it and asked if I could arrange that which is highly inappropriate. He subsequently became annoyed during a later board meeting at my refusal to recommend that we sell the**

**vehicles via bid** rather than trading them in and insisted that I give a recommendation. I replied that the board should make that decision on whether to trade the vehicles in or sell them via bid process. Mr. Calhoun called me the following Monday ... He said yes meet me in your office ... topic of conversation was the selling of staff vehicles and **insisted that I agreed to make that happen and had reneged on the deal** in the previous board meeting." (emphasis added)

**ANSWER: Defendants admit only that the Board received a letter purportedly drafted by Plaintiff on or about September 7, 2021. Defendants deny the remaining allegations in paragraph 40 of the Petition, including the truth of any of the statements made in the letter.**

41. In his September 7, 2021 letter, Plaintiff also reported intimidation from Calhoun because Plaintiff allegedly arranged for someone to run against Calhoun in a recent election, even though Calhoun had in fact run unopposed.

**ANSWER: Defendants admit only that the Board received a letter purportedly drafted by Plaintiff on or about September 7, 2021. Defendants deny the remaining allegations in paragraph 41 of the Petition, including the truth of any of the statements made in the letter.**

42. On November 23, 2021, the Board dismissed further consideration of the allegations in the letter.

**ANSWER: Denied.**

43. Upon information and belief, no serious investigation was ever conducted by the Board with respect to any protected complaints made by Plaintiff described herein.

**ANSWER: Denied.**

44. Plaintiff filed a complaint with the Missouri Ethics Commission on January 28, 2022, about much of the foregoing; upon hearing about the complaint, Calhoun stated, "You hate me because you can't do nothing to me."

**ANSWER: Denied.**

45. Mo. Rev. Stat. § 105.452(3) provides that no public official shall, "*Favorably act on any matter that is so specifically designed so as to provide a special monetary benefit to such*

*official or his spouse or dependent children, including but not limited to increases in retirement*

*benefits, whether received from the State of Missouri or any third party by reason of such act."*

**ANSWER:** **The allegations in paragraph 45 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 45 of the Petition are construed as factual allegations, Defendants deny them.**

46. Chairman Calhoun and other Board Members are public officials for purposes of Mo. Rev. Stat. § 105.452(3).

**ANSWER:** **The allegations in paragraph 46 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 46 of the Petition are construed as factual allegations, Defendants deny them.**

**Evidence of Retaliatory, Racial, and Age-Based Animus Against Plaintiff**

47. Prior to becoming Chief, Plaintiff had been subjected to occasional stray remarks evidencing racial animus by the prior Chief, such as being told, "You don't know your place" and that he was "too big for his britches" (later characterized by Plaintiff as, "a reference to a negro or black person who doesn't know his place and needs to be broken"); he was also told by a coworker that he was "quite the cocksman."

**ANSWER:** **Denied.**

48. Plaintiff was told, "You just think you can do what the fuck you wanna do around here" by Calhoun.

**ANSWER:** **Denied.**

49. Plaintiff was viewed by Defendants as being too assertive for a Black man, and as not being acquiescent or submissive enough to white leadership on the Board and/or white citizenship in Black Jack.

**ANSWER:** **Denied.**

50.     Treasurer Kenneth Schmalbeck told Plaintiff that the Board felt like Plaintiff needed his "hand slapped"; this was in the aftermath of the comments about being "too big for (his) britches" and not "knowing (his) place"; at that time, two of the three Board members were white.

**ANSWER:    Denied.**

51.     On various occasions, Plaintiff was personally, profanely and angrily attacked verbally by Chairman Calhoun; this would not have occurred but for Plaintiff's protected activity and/or Plaintiff's race.

**ANSWER:    Denied.**

52.     Although Calhoun is also African American, upon information and belief, he was motivated to discriminate against Plaintiff on the basis of Plaintiff's race in order to leverage and validate his own power, to curry the favor of white employees/Board members/voters, and/or due to complex psychological reasons.

**ANSWER:    Defendants admit only that Calhoun is African American. Defendants deny the remaining allegations in paragraph 52 of the Petition.**

53.     "Black on Black" racism is a well-recognized phenomena in sociological, political, and psychological literature, as well as in jurisprudence: indeed, as Judge Sippel ruled in <u>Belton v. Shinseki</u>, 2009 WL 2488025 (E.D.Mo. 2009), "the VA's argument that Belton could not have experienced racial discrimination because her supervisor is also African–American is wrong as a matter of law, requiring me to deny the VA's motion for judgment as a matter of law."

**ANSWER:    The allegations in paragraph 53 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 53 of the Petition are construed as factual allegations, Defendants deny them.**

54.     On October 2, 2018, Director Adler, who is white, received an anonymous letter referring to Plaintiff as the "Nigger Fire Chief," and requested firefighters and others come to the boardroom to hear the contents, which he then read aloud.

**ANSWER:     Denied.**

55.     Adler intended to humiliate Plaintiff and in fact did humiliate Plaintiff.

**ANSWER:     Denied.**

56.     After reading the letter, Adler asked Plaintiff, "Do you think I'm a racist piece of bigot shit and I had something to do with this?"

**ANSWER:     Denied.**

57.     When Plaintiff asked Adler why Adler would ask that, Adler replied, "Because you're the big cheese."

**ANSWER:     Denied.**

58.     A second anonymous letter arrived and Adler again read it aloud, demanding others come into a room for his recitation.

**ANSWER:     Denied.**

59     Adler asked Plaintiff if Plaintiff wanted to read the second letter, to which Plaintiff asked why Adler thought Plaintiff would want to do that after Adler had a read a letter with the "N" word last time.

**ANSWER:     Denied.**

60.     Adler replied—mimicking a Black urban dialect—"because you have the pulse of the people, man."

**ANSWER:     Denied.**

61.     Plaintiff was denied training opportunities due to his race and/or protected activities.

**ANSWER:     Denied.**

62.     In 2018, white employees were allowed to use public funds to bring their wives while Black employees were not; Plaintiff was excluded from this trip.

**ANSWER:     Denied.**

63.     Plaintiff was denied leadership training opportunities while other members were approved; others later declined said opportunities in protest of Plaintiff's treatment.

**ANSWER:     Denied.**

64.     Among other indignities related to his race and/or protected activities, Plaintiff was stripped of the access to the Fire Chief's vehicle and forced to drive a decommissioned staff vehicle with high mileage and less mechanical dependability with no explanation given.

**ANSWER:     Denied.**

65.     Plaintiff was treated less favorably than the previous Fire Chief and the Assistant Fire Chief, who were Caucasian and who did not engage in protected whistleblower activity or protected speech.

**ANSWER:     Denied.**

66.     For example, Plaintiff was not allowed to submit recommendations for the last captains' promotions, which was part of the agreement with the Board and in Plaintiff's duties and job description.

**ANSWER:     Denied.**

67. Via correspondence dated November 8, 2021, engaging in protected activity, Plaintiff alleged he was being racially discriminated against by Calhoun and the Fire District; the Board dismissed this complaint as of January 24, 2022.

**ANSWER:** **Denied.**

68. During a time of race-related civil unrest in the community, he was accused of receiving unapproved compensation, which had in fact been approved by the Board, as was quickly determined.

**ANSWER:** **Denied.**

69. Plaintiff was repeatedly asked about his retirement plans and significant pressure was applied to him by Chairman Calhoun with regard to how soon he was going to retire.

**ANSWER:** **Denied.**

70. In contrast, Chief Gantner, who is white, was offered an extension past the age of 60 and was under no such retirement pressure.

**ANSWER:** **Denied.**

71. Calhoun and the Board deliberately precluded extension of the mandatory retirement age from 62 due to illegal animus against Plaintiff; indeed, another retiring employee stated, "If it weren't for you fighting with him (Plaintiff), I wouldn't have to retire."

**ANSWER:** **Denied.**

72. Retired Battalion Chief Thomas Torminio and other Labor and Pension Committee Members indicated that the retirement age would've changed as requested, but the Board was tired of Plaintiff and wanted him gone.

**ANSWER:** **Denied.**

73. If not for illegal animus against Plaintiff, retirement age would have been extended.

**ANSWER:    Denied.**

74.    Plaintiff is entitled to lost wages and benefits accruing past the age of 62.

**ANSWER:    Denied.**

**Plaintiff's Continued Protected Activity and Subsequent Retaliation, Including
Calhoun's Ongoing Efforts to Have Plaintiff Removed**

75.    On or about July 19, 2022, Plaintiff filed a charge of discrimination with the EEOC

and MCHR alleging retaliation and discrimination due to race, color, and age (thereafter amended

an August 29).

**ANSWER:    Defendants admit only that on or about July 19, 2022, Plaintiff filed a
charge of discrimination with the EEOC and MCHR alleging retaliation and discrimination
due to race, color, and age. Defendants deny all allegations of Plaintiff's charge of
discrimination filed with the EEOC and MCHR.**

76.    In his charge Plaintiff also referenced retaliation due to whistleblowing activities.

**ANSWER:    Defendants admit only that, in Plaintiff's charge of discrimination filed
with the EEOC and MCHR, Plaintiff referenced alleged retaliation due to whistleblowing
activities. Defendants deny all allegations of Plaintiff's charge of discrimination filed with
the EEOC and MCHR.**

77.    Defendants received prompt notification of Plaintiff filing his Charge and its

contents.

**ANSWER:    Defendants admit that they received notification of Plaintiff filing his
Charge and its contents. Defendants deny all allegations of Plaintiff's charge of
discrimination filed with the EEOC and MCHR.**

78.    Defendants were made aware that Plaintiff was, in 2021-2022, re-raising a number

of prior, critical incidents regarding corruption and discrimination, including but certainly not

limited to, his 2017 complaint about Calhoun pressuring vendors for perks, his 2018 complaints

about the health insurance issue, and the "nigger fire chief" incident.

**ANSWER:    Denied.**

79. After the filing of Plaintiff's Charge of Discrimination, Chairman Calhoun made efforts to get the Union to issue a vote of "no confidence" on Plaintiff in order to have Plaintiff removed as Chief.

**ANSWER: Denied.**

80. Calhoun showed Plaintiff's EEOC/MCHR charge to Battalion and Chief Dave Schmidt as part of these efforts.

**ANSWER: Denied.**

81. Chairman Calhoun said Plaintiff was trying to "ruin the place" and was trying to "destroy the department" by going to the media, which was not true.

**ANSWER: Denied.**

82. During the running of a bond issue, a contractor, Videographer Raymond Kemp, contacted Plaintiff on the morning of Saturday, September 3, 2022, saying, "I got a strange phone call from David Calhoun, asking for receipts for the video. This guy is looking for something against you"; Kemp went on to say that Calhoun called Kemp on several occasions looking for something to use against Plaintiff.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 82 of the Petition, and, therefore, Defendants deny those allegations and demand strict proof thereof.**

83. When Kemp copied Plaintiff on a reply to Calhoun, Calhoun responded to Kemp (verbally), "I guess I see whose side you're on"; Kemp relayed this conversation to Plaintiff and indicated he did not appreciate getting a call like that from Calhoun.

**ANSWER: Denied.**

84. Kemp noted he had dealt with fire chiefs for over two decades and had never had a board member contact him personally.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84 of the Petition, and, therefore, Defendants deny those allegations and demand strict proof thereof.

85. On more than one occasion, Chairman Calhoun tried to intimidate Plaintiff by stating, "you can't do anything to me because I'm an elected official" or words to that effect.

**ANSWER    Denied.**

86. Plaintiff began to suffer symptoms of intense emotional distress, anxiety, and night terrors, and was ultimately diagnosed with Post Traumatic Stress Disorder (PTSD).

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86 of the Petition, and, therefore, Defendants deny those allegations and demand strict proof thereof.

87. Plaintiff came to believe that Chairman Calhoun was coming into Plaintiff's office and going through his personal effects, rifling through his cabinets and drawers.

**ANSWER:    Denied.**

88. Plaintiff put a camera in his office, which confirmed his suspicion that Chairman Calhoun was indeed invading his privacy.

**ANSWER:    Deied.**

89. Plaintiff had every right and authority as Chief to have a camera in his office.

**ANSWER:    Denied.**

90. On December 6, 2022, Plaintiff attended a closed session board meeting as previously instructed by the Board of Directors of the Fire District.

**ANSWER:    Admitted.**

91. During this meeting district a Fire District attorney attempted to intimidate Plaintiff by insinuating that Plaintiff had possibly violated a Missouri law, despite Missouri being a one-party consent state.

**ANSWER:    Denied.**

92.    Plaintiff repeated several times during this meeting that he was extremely uncomfortable that the board would pursue personnel action against him while an active EEOC/MCHR investigation was still pending.

**ANSWER:    Denied.**

93.    The Fire District attorney stated that they weren't there to talk about the EEOC complaint or the investigation, or Plaintiff's allegations of retaliation following his filing of the charge.

**ANSWER:    Admitted.**

94.    On a prior occasion, in circa 2019, the same attorney had made a comment to Plaintiff, who had then received a Right to Sue notice from EEOC/MCHR, to the effect that the threat of a lawsuit over the heads of the Board of Directors would have a chilling impact on them.

**ANSWER:    Denied.**

95.    The Board of Directors was unconcerned about a supervisor going through Plaintiff's personal workspace and drawers, or the recorded conversation between Plaintiff and Chairman Calhoun where Calhoun admitted that he directed Plaintiff on multiple occasions to arrange for him to receive a decommission fire department vehicle.

**ANSWER:    Denied.**

96.    The Board was also unconcerned that Mr. Calhoun showed Plaintiff's EEOC complaint to Battalion Chief Dave Schmidt and attempted to have labor members file the vote of "no confidence" against Plaintiff as Fire Chief.

**ANSWER:    Denied.**

97.     The meeting ended with Plaintiff being visibly upset and anxious. He asked the Assistant Chief Roger Ellison to take his blood pressure and it was extremely high (192/122, vs a normal range of 130/72).

**ANSWER:     Denied.**

98.     Plaintiff returned to the board room while they were still meeting and informed them that he would need to seek prompt medical treatment.

**ANSWER:     Denied.**

### The Discriminatory and Retaliatory Termination of Plaintiff

99.     On December 27, 2022, Plaintiff, as he was beginning a vacation, was visited at his house by Chairman Calhoun and the Assistant Chief Roger Ellison.

**ANSWER:     Denied.**

100.     During that meeting, Plaintiff was suspended by the Fire District—ostensibly for installing a camera in his own office—and ordered to surrender his car, phone, computer devices, and credit cards.

**ANSWER:     Denied.**

101.     The Fire District had never before asked for the return of electronic devices of any suspended employee in the past.

**ANSWER:     Denied.**

102.     Plaintiff had not been subjected to any progressive discipline leading up to the suspension and had not, during his career, received written discipline.

**ANSWER:     Denied.**

103.     There is no Fire District rule or regulation prohibiting recording in an employee's office.

**ANSWER: Denied.**

104.     As soon as practicable, Plaintiff returned all items requested upon his suspension or had left them in his office, but was baselessly accused of not returning a laptop; Plaintiff had no such laptop in his possession—indeed, video captured by Plaintiff demonstrates that during nonworking areas, it is left closed on Plaintiff's desk.

**ANSWER: Denied.**

105.     Plaintiff notified Defendants after suspension that might need medical leave for reasons of intense anxiety and depression; Defendants requested medical documentation by January 17, which Plaintiff, in good faith, made every effort to obtain.

**ANSWER: Denied.**

106.     Plaintiff was terminated on January 17 at a Board meeting; the pretextual reasons given in a January 18 letter were the alleged retention of a laptop during suspension, using a recording device in his office, and not yet having received Plaintiff's physician letter regarding his mental health status (which the physician's office was unable to produce until January 18).

**ANSWER: Denied.**

107.     As stated above, Calhoun had made many efforts to have Plaintiff removed prior to the in-office recording or suspension ever taking place; clearly, the sated reasons for termination are not the true reasons for termination.

**ANSWER: Denied.**

108.     As Plaintiff was indefinitely suspended, the timeliness of his medical request was irrelevant and, in any event, would not constitute misconduct under any circumstances.

**ANSWER: Denied.**

109     Unlike other similarly situated employees who were separated from employment (including the preceding Chief), Plaintiff was not offered severance, a buy-back of earned PTO time, or other benefits at separation.

**ANSWER:     Denied.**

110.    Although the Board had knowledge of Calhoun's toxic, retaliatory, and discriminatory behavior, they never took steps to remedy it, despite the Fire District's policy stating, "Any form of retaliation against an individual for filing a bona fide complaint under this policy or for assisting in an investigation is expressly prohibited and will not be tolerated."

**ANSWER:     Denied.**

111.    Plaintiff has suffered, and will continue to suffer, significant economic losses, psychological trauma, and other damages as a result of the actions of Defendants, including but not limited to lost wages, lost retirement and health benefits, damage to his reputation, emotional distress, physical disturbances, damage to his career trajectory and future earnings, loss of standing in the community, and various material benefits of his employment.

**ANSWER:     Denied.**

112.    Defendants acted knowingly and with malice and evil motive.

**ANSWER:     Denied.**

113.    Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendants for their reprehensible conduct and to deter others from acting in a similar matter.

**ANSWER:     Denied.**

114.    As a consequence of Defendants' actions as described herein, Plaintiff has lost, and continues to lose, wages and other financial incidents and benefits.

**ANSWER:     Denied.**

115.    As a consequence of Defendants' actions as described herein, Plaintiff has experienced severe emotional distress, embarrassment, and a loss of reputation.

**ANSWER:    Denied.**

116.    As a consequence of Defendants' actions as described herein, Plaintiff has incurred, and will continue to incur, attorney's fees, costs, and expenses.

**ANSWER:    Denied.**

## COUNT I - RETALIATION/ILLEGAL DISCHARGE IN VIOLATION OF MO. REV. STAT. § 105.055

*(Against Defendant Fire District)*

117.    Plaintiff hereby incorporates by reference all preceding Paragraphs.

**ANSWER:    Defendants hereby incorporate by reference their responses to paragraphs 1-116 of the Petition as if fully set forth herein.**

118.    Plaintiff was retaliated against for speaking out against the Chairman Calhoun and the Board for making policy and procedures modifications for a single individual, reporting conflicts of interest, fiscal irregularities, wasteful spending, and other malfeasance.

**ANSWER:    Denied.**

119.    MO Rev. Stat. § 105.055 (3.)(1)(a)-(b) provides that a state employee may not be retaliated against ("any disciplinary action whatsoever") for disclosing any alleged protected activity under investigation or disclosing information the employee *reasonably believes* evidences a violation of any law, rule, or regulation, or for disclosing:

a.  mismanagement,
b.  gross waste of funds,
c.  abuse of authority,
d.  violation of policy,
e.  waste of public resources,
f.  breaches of professional ethical canons, or
g.  danger to public health and safety.

**ANSWER:** The allegations in paragraph 119 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 19 of the Petition are construed as factual allegations, Defendants deny that this is an accurate characterization of the cited statute.

120. Plaintiff reported mismanagement or gross waste of funds, abuse of authority, violation of policy, waste of public resources, and other protected misconduct under the statute.

**ANSWER:** The allegations in paragraph 120 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 120 of the Petition are construed as factual allegations, Defendants deny them.

121. Plaintiff reported serious misconduct to his employer which was in violation of clear mandates of public policy, as articulated by statutes and regulations cited herein, and refused to carry out directions to violate said policy.

**ANSWER:** Denied.

122. Said policy, for the prevention of fraud, self-dealing, breach of fiduciary duties, and dishonest practices on the part of public officials, is articulated in Missouri statutes, including but not limited to Mo. Rev. Stat. § 105.452(3).

**ANSWER:** The allegations in paragraph 122 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 122 of the Petition are construed as factual allegations, Defendants deny them.

123. Defendant stepped out of the scope of his defined responsibilities and routine job duties in his complaints.

**ANSWER:** Denied.

124. Plaintiff was illegally discharged and retaliated against by Defendant due to his complaints about specific fraud, dishonest practices, and other proscribed conduct under the statute being perpetrated by Defendant.

**ANSWER:** Denied.

125. Plaintiff's protected activity played a role in the termination and had a determinative influence.

**ANSWER:    Denied.**

126. Upon a showing that Plaintiff engaged in protected activity by clear and convincing evidence, Defendant will not be able to carry its burden of showing disciplinary action was not the result of Plaintiff's protected activity.

**ANSWER:    Denied.**

127. Plaintiff's termination was clearly pretextual and illegal.

**ANSWER:    Denied.**

WHEREFORE, having fully answered Count I of Plaintiff's Petition, Defendant Black Jack Fire Protection District prays this Honorable Court dismiss Count I at Plaintiff's cost, and for such other and further relief this Court deems just and proper under the circumstances.

**COUNT II – RETALIATION,**
**AGAINST FIRST AMENDMENT PROTECTED ACTIVITY, AND**
**IN VIOLATION OF THE FOURTEENTH AMENDMENT PROTECTIONS**
**OF EQUAL PROTECTION AND DUE PROCESS**
**UNDER THE U.S. CONSTITUTION / 42 U.S.C § 1983**

*(Against both Defendants)*

128. Plaintiff hereby incorporates by reference all preceding paragraphs.

**ANSWER:    Defendants hereby incorporate by reference their responses to paragraphs 1-127 of the Petition as if fully set forth herein.**

129. Both Defendants are a "person" for purposes of Section 1983.

**ANSWER:    The allegations in paragraph 129 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 129 of the Petition are construed as factual allegations, Defendants deny them.**

130. Defendants abused the power given to them by the state.

**ANSWER:    Denied.**

131.     The actions taken by individual Defendants was taken in their individual capacity while acting under color of state law, were afforded to them by virtue of state law and made possible only because Defendants were clothed with the authority of state law.

**ANSWER:     The allegations in paragraph 131 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 131 of the Petition are construed as factual allegations, Defendants deny them.**

132.     By the acts described above, and in violation of 42 U.S.C § 1983 and US Constitution, Defendants, agents of the state, unlawfully deprived Plaintiff of his rights under the First Amendment of the U.S. Constitution and terminated him specifically for speech of a public nature and of interest to the public, including the corruption of public officials, misuse of funds, and other misdeeds, as set forth above.

**ANSWER:     Denied.**

133.     Section 1 of the Fourteenth Amendment provides, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

**ANSWER:     Defendants admit that paragraph 133 of the Petition accurately restates a portion of Section 1 of the Fourteenth Amendment to the United States Constitution. Defendants deny that paragraph 133 of the Petition fully restates Section 1 of the Fourteenth Amendment to the United States Constitution.**

134.     Plaintiff spoke out against matters of public corruption, mismanagement, and waste—stepping out of his assigned job duties and role to do so—and was terminated and otherwise retaliated against because of it.

**ANSWER:     Denied.**

135.     Plaintiff also complained of race and age discrimination, which he reasonably believed to be valid.

**ANSWER:      Denied.**

136.     Plaintiff's speech regarding public corruption, waste, and mismanagement was protected by the First Amendment and other Constitutional provisions.

**ANSWER:      Denied.**

137.     Plaintiff's speech regarding race and age discrimination was protected by the Equal Protection Clause of the Fourteenth Amendment and other Constitutional provisions.

**ANSWER:      Denied.**

138.     Plaintiff was deprived of rights, privileges and immunities.

**ANSWER:      Denied.**

139.     Defendants conduct adversely effected Plaintiff's speech.

**ANSWER:      Denied.**

140.     A causal link exists between Plaintiff's speech and adverse acts suffered by Plaintiff, including termination of employment.

**ANSWER:      Denied.**

141.     Defendants abused powers given to them by the state and under color of state law.

**ANSWER:      Denied.**

142.     The actions taken by individual Defendant Calhoun was taken in his individual capacity while acting under color of state law, was afforded to him by virtue of state law and made possible only because Defendants were clothed with the authority of state law.

**ANSWER:      Denied.**

143.     The conduct of Defendants was outrageous and willfully undertaken with reckless disregard for Plaintiff's rights.

**ANSWER:      Denied.**

WHEREFORE, having fully answered Count II of Plaintiff's Petition, Defendants Black Jack Fire Protection District and David Calhoun pray this Honorable Court dismiss Count II at Plaintiff's cost, and for such other and further relief this Court deems just and proper under the circumstances.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### *(Against Defendant Calhoun)*

144.    Plaintiff incorporates by reference all preceding Paragraphs

**ANSWER:    Defendants hereby incorporate by reference their responses to paragraphs 1-143 of the Petition as if fully set forth herein.**

145.    As set forth above, Defendant Calhoun, abusing his position of power and authority, engaged in extreme and outrageous conduct that resulted in great emotional distress and psychological harm to Plaintiff's person.

**ANSWER:    Denied.**

146.    Defendant's insensitive and cruel conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

**ANSWER:    Denied.**

147.    Defendant Calhoun's conduct was extreme and outrageous.

**ANSWER:    Denied.**

148.    Defendant Calhoun acted intentionally or recklessly.

**ANSWER:    Denied.**

149.    Defendant Calhoun's conduct caused severe emotional distress in Plaintiff, to the point of manifesting as bodily harm, and said mental injury is medically diagnosable and significant.

**ANSWER: Denied.**

WHEREFORE, having fully answered Count III of Plaintiff's Petition, Defendant David Calhoun prays this Honorable Court dismiss Count III at Plaintiff's cost, and for such other and further relief this Court deems just and proper under the circumstances.

## COUNT IV – AGE DISCRIMINATION, IN VIOLATION OF SECTION 1983

*(Against both Defendants)*

150.  Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER: Defendants hereby incorporate by reference their responses to paragraphs 1-149 of the Petition as if fully set forth herein.**

151.  Age discrimination in employment violates the Equal Protection Clause of the United States Constitution (14th Amendment) and Due Process provisions.

**ANSWER: The allegations in paragraph 151 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 151 of the Petition are construed as factual allegations, Defendants deny them and demand strict proof thereof.**

152.  Plaintiff's termination from employment was motivated by his age, 58.

**ANSWER: Denied.**

153.  Said discrimination was not rationally related to a legitimate state interest.

**ANSWER: Denied.**

154.  The ADEA does not preclude an action for age discrimination under Section 1983. See, e.g., Mummelthie v. City of Mason City, IA, 873 F.Supp. 1293 (N.D. Iowa 2011); Levin v. Madigan, 692 F.3d 607 (7th Cir. 2012); Mustafa v. State of Nebraska Dept. of Corr. Servs., 196 F.Supp.2d 945 (D.Neb. 2002).

**ANSWER: The allegations in paragraph 154 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph**

154 of the Petition are construed as factual allegations, Defendants deny them and demand strict proof thereof.

155. In this regard, the rights under 1983 are particularly distinct from ADEA rights in the instant matter where the ADEA expressly limits or exempts claims by certain individuals, including elected officials and certain members of their staff, appointees, law enforcement officers, and firefighters. See 29 U.S.C. 623(j), 630(f).

**ANSWER: The allegations in paragraph 155 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 155 of the Petition are construed as factual allegations, Defendants deny them and demand strict proof thereof.**

156. The facts alleged give rise to an independent federal right secured by the U.S. Constitution.

**ANSWER: The allegations in paragraph 156 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 156 of the Petition are construed as factual allegations, Defendants deny them.**

157. Both Defendants are a "person" for purposes of Section 1983.

**ANSWER: The allegations in paragraph 157 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 157of the Petition are construed as factual allegations, Defendants deny them.**

158. Defendants abused the power given to them by the state.

**ANSWER: Denied.**

159. Plaintiff was denied due process and equal protection.

**ANSWER: Denied.**

160. A causal nexus exists between Plaintiff's age and adverse actions taken against him, including termination from employment.

**ANSWER: Denied.**

161. The actions taken by individual Defendant Calhoun was taken in his individual capacity while acting under color of state law, was afforded to him by virtue of state law and made possible only because Defendants were clothed with the authority of state law.

**ANSWER: The allegations in paragraph 161 of the Petition are legal conclusions to which no response is required. To the extent the allegations in paragraph 161 of the Petition are construed as factual allegations, Defendants deny them.**

WHEREFORE, having fully answered Count IV of Plaintiff's Petition, Defendants Black Jack Fire Protection District and David Calhoun pray this Honorable Court dismiss Count IV at Plaintiff's cost, and for such other and further relief this Court deems just and proper under the circumstances.

## COUNT V – RETALIATION, IN VIOLATION OF 42 U.S.C. § 1981

### *(Against both Defendants)*

162. Plaintiff incorporates by reference the above paragraphs as if fully set forth herein.

**ANSWER: Defendants hereby incorporate by reference their responses to paragraphs 1-161 of the Petition as if fully set forth herein.**

163. Plaintiff's protected activity, as described herein, was a "but for" factor in his termination.

**ANSWER: Denied.**

164. The purported reasons for Plaintiff's termination were not based in fact and were pretext for unlawful retaliation.

**ANSWER: Denied.**

165. Plaintiff reported the reported the harassment and race-based wrongful, discriminatory, and retaliatory conduct committed by his supervisors and others, however, nothing was done to stop the ongoing harassment, intimidation, and retaliation.

**ANSWER:    Denied.**

166.    Defendants, by the actions described herein, retaliated against Plaintiff due to his protected activity of protesting racial discrimination and/or harassment.

**ANSWER:    Denied.**

167.    A causal connection exists between Plaintiff's termination and his protected activity.

**ANSWER:    Denied.**

168.    The Defendants' behavior violated 42 U.S.C. § 1981

**ANSWER:    Denied.**

169.    Defendants' conduct was outrageous due to their evil motive and reckless disregard for Plaintiff's rights thereby entitling him to punitive damages in an amount that will punish Defendants and will deter Defendants and others from like conduct.

**ANSWER:    Denied.**

WHEREFORE, having fully answered Count V of Plaintiff's Petition, Defendants Black Jack Fire Protection District and David Calhoun pray this Honorable Court dismiss Count V at Plaintiff's cost, and for such other and further relief this Court deems just and proper under the circumstances.

## COUNT VI – RACE DISCRIMINATION, IN VIOLATION OF 42 U.S.C. § 1981 AND 42 U.S.C. § 1983

*(Against both Defendants)*

170.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

**ANSWER:    Defendants hereby incorporate by reference their responses to paragraphs 1-169 of the Petition as if fully set forth herein.**

30

171.    The termination of Plaintiff – an adverse employment action – was motivated by his race.

**ANSWER:    Denied.**

172.    "But for" his race, Plaintiff would not have been terminated.

**ANSWER:    Denied.**

173.    Similarly situated employees were treated more favorably than Plaintiff.

**ANSWER:    Denied.**

174.    Defendants, by the actions described herein, discriminated against Plaintiff due to his race in violation of his Constitutional guarantees of Equal Protection, as enforced via 42 U.S.C. § 1981.

**ANSWER:    Denied.**

175.    Section 1981 was originally passed as part of the Civil Rights Act of 1866 to protect newly freed slaves and their descendants by guaranteeing them the same rights enjoyed by white citizens.

**ANSWER:    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 175 of the Petition, and, therefore, Defendants deny those allegations and demand strict proof thereof.**

176.    Section 1981(a) provides that "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens..."

**ANSWER:    Defendants admit that paragraph 176 of the Petition accurately restates a portion of 42 U.S. Code Section 1981(a). Defendants deny that paragraph 176 of the Petition fully restates 42 U.S. Code Section 1981(a).**

177. Race-based discrimination against Plaintiff further violated Plaintiff's constitutional rights of due process and equal protection, as enforced under 42 U.S.C. § 1983.

**ANSWER:** **Denied.**

178. The explanations offered by Defendants are demonstrably pretextual.

**ANSWER:** **Denied.**

179. As a consequence of Defendants' actions as described herein, Plaintiff has lost, and continues to lose, wages and other financial incidents and benefits.

**ANSWER:** **Denied.**

180. As a consequence of Defendants' actions as described herein, Plaintiff has experienced severe emotional distress, embarrassment, and a loss of reputation.

**ANSWER:** **Denied.**

181. As a consequence of Defendants' actions as described herein, Plaintiff has incurred, and will continue to incur, attorney's fees, costs, and expenses.

**ANSWER:** **Denied.**

182. The conduct of Defendants was outrageous and willfully undertaken with reckless disregard for Plaintiff's rights.

**ANSWER:** **Denied.**

WHEREFORE, having fully answered Count VI of Plaintiff's Petition, Defendants Black Jack Fire Protection District and David Calhoun pray this Honorable Court dismiss Count VI at Plaintiff's cost, and for such other and further relief this Court deems just and proper under the circumstances.

## AFFIRMATIVE DEFENSES

Defendants set forth the following affirmative defenses to the claims made in Plaintiff's Petition. In doing so, Defendants do not assume the burden of proof with respect to any of the affirmative defenses where the substantive law provides otherwise.

1.      The Petition fails to state a claim upon which relief may be granted.

2.      Plaintiff has failed to exhaust the administrative remedies required under the Missouri Human Rights Act.

3.      Plaintiff's claims are barred because he did not suffer a tangible adverse employment action.

4.      Plaintiff does not have standing to bring this claim.

5.      Plaintiff's claim for monetary damages against Defendants is barred by the Eleventh Amendment to the United States Constitution and is not cognizable under 42 U.S.C. § 1983.

6.      Plaintiff's claim for punitive damages against Defendants is barred by the Constitutions of the United States and of the State of Missouri.

7.      Defendants are immune from Plaintiff's claims of punitive damages.

8.      Plaintiff's claims are barred by the applicable statutes of limitation and/or statutes of repose.

9.      Plaintiff's claims are barred by reason of laches, waiver, estoppel, unclean hands, unjust enrichment, and/or any other equitable defense.

10.     Plaintiff has failed to mitigate his damages by, among other things, not taking reasonable efforts to find alternative employment and taking and/or allowing others to take actions on his behalf that have discouraged potential employers from hiring him.

11.     Plaintiff is estopped from bringing this suit by his own actions or inactions, including but not limited to, Plaintiff's failure to bring claims at his first opportunity.

12.     If another defendant or another party makes a settlement with Plaintiff, or if Plaintiff receives anything of value from any party, individual or entity, the amount of such payment or consideration should be treated as a payment in full satisfaction of the damages of Plaintiff, or in the alternative, that the amount of such payment or consideration should be a set off against any judgment that may be entered herein.

13.     If any portion of Plaintiff's alleged damages are divisible, Defendants assert that such alleged damages may be subject to the doctrines of apportionment and/or alternate proximate cause.

14.     Some or all of the damages claimed by Plaintiff are limited or are not recoverable under the applicable law. Further, in the event damages are to be awarded to Plaintiff, such damages should be reduced or offset by various benefits received under applicable law.

15.     Plaintiff's alleged damages were caused and brought about by an intervening and superseding cause and were not caused by Defendants or by a person or entity for whom Defendants are responsible.

16.     Defendants are immune from the claims contained in this Petition.

17.     Plaintiff's claims are barred by the doctrine of qualified immunity, and Plaintiff has failed to plead any exception thereto.

18.     Plaintiff's claims are barred by the doctrine of sovereign immunity, and Plaintiff has failed to plead any exception thereto. To the extent Plaintiff alleges liability based on respondeat superior, respondeat superior liability is not recognized under 42 U.S.C. § 1983.

19.     Plaintiff's claims against Defendant David Calhoun are barred by official immunity and the public immunity doctrine, and Plaintiff has failed to plead any exception thereto.

20.     Defendants acted in a manner that was proper, reasonable, lawful, and in the exercise of good faith, such that they cannot be liable to Plaintiff.

21.     Plaintiff's claims against the Black Jack Fire Protection District are subject to the statutory cap on damages set forth in R.S.Mo. § 537.600, *et seq.*

22.     Defendants are protected from suit by the doctrine of official immunity in that their actions were discretionary and therefore, do not subject them to suit in their individual capacity.

23.     Defendants are not properly named because they are not subject to suit in their individual capacity for actions taken in their official capacity.

24.     Defendants' actions were reasonable, taken in good faith, necessary, based on legitimate reasons, and justified under the circumstances.

25.     Defendants had probable cause to take the actions they did.

26.     Defendants deny each and every allegation of Plaintiff's Petition not heretofore responded to.

27.     Defendants incorporate each and every additional affirmative defense that may be uncovered or made known during the investigation and discovery of this case. Defendants specifically reserve the right to amend their Answer to include additional affirmative defenses at a later time.

WHEREFORE, having fully answered Plaintiff's Petition, Defendants Black Jack Fire Protection District and David Calhoun pray this Honorable Court dismiss the Petition at Plaintiff's cost, and for such other and further relief this Court deems just and proper under the circumstances.

Respectfully submitted,

GOLDBERG SEGALLA, LLP

By:   /s/ *John M. Allen*
      John M. Allen, #49642MO
      Andrea M. Sciarratta, #71162MO
      8000 Maryland Ave., Ste. 640
      St. Louis, MO 63105
      P: 314-446-3350
      F: 314-446-3360
      E: jallen@goldbergsegalla.com
        asciarratta@goldbergsegalla.com
      *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served through the Court's eFiling system and/or by facsimile, hand delivery, electronic mail, or U.S. Mail, postage prepaid, this 28th day of April, 2023 to all counsel of record.

    /s/ *John M. Allen*