| | | |
|---|---|---|
| ANKENETH CORBIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 4:23-cv-00516-JAR |
| v. | ) | |
| | ) | |
| BLACK JACK FIRE PROTECTION | ) | |
| DISTRICT and DAVID CALHOUN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

Plaintiff Ankeneth Corbin ("Plaintiff") put a hidden video camera in his office on August 29, 2022. After the Board of Directors for the Black Jack Fire Protection District ("District") found out about that hidden camera, the Board, including David Calhoun ("Calhoun"), voted unanimously to put Plaintiff on paid administrative leave and ordered Plaintiff to stop recording and return all District owned property. While Plaintiff was on leave, the Board discovered that Plaintiff had additional recording devices in his office. Plaintiff also failed to return all District property as he was ordered to do. Based on that information, and for those reasons, the Board voted unanimously to terminate Plaintiff's employment on January 17, 2023.

In the face of these undisputed facts proving the Board and the District had legitimate, non-discriminatory, and non-retaliatory reasons to suspend and then terminate Plaintiff's employment, Plaintiff claims the District and Calhoun (District and Calhoun are referred to collectively herein as "Defendants") discriminated and retaliated against him and caused him severe emotional distress. Plaintiff asserts six claims against the Defendants, as follows:

retaliation/illegal discharge in violation of Mo. Rev. Stat. § 105.055 (Count I); 42 U.S.C. § 1983 retaliation (Count II); intentional infliction of emotional distress (Count III); 42 U.S.C. § 1983 age discrimination (Count IV); 42 U.S.C. § 1981 retaliation (Count V); and race discrimination in violation of 42 U.S.C. §§ 1981 and 1983 (Count VI). The pleadings, discovery and evidence show that there is no genuine issue as to any material fact and that the Defendants are entitled to judgment as a matter of law as to all six of Plaintiff's claims.

## II.   LAW AND ARGUMENT

### A.   <u>Summary Judgment Standard.</u>

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Jackson v. UPS*, 643 F.3d 1081, 1085 (8th Cir. 2011). "The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* Plaintiff has failed to come forward with specific facts showing that there is a genuine issue for trial as to any one of his six claims, so the Defendants are entitled to summary judgment.

### B.   <u>Plaintiff's § 105.055 Whistleblower Claim (Count I) Fails Because the District's Actions Were Not the Result of any Report by Plaintiff.</u>

Mo. Rev. Stat. § 105.055, Missouri's whistleblower statute for public employees, "protects public employees by prohibiting any supervisor or appointment authority of any public employer from taking any disciplinary action whatsoever against a public employee for the disclosure of any alleged prohibited activity under investigation or any related activity, or for the disclosure of information which the employee reasonably believes evidences a violation of any law, rule or

regulation, or other wrongful activity, such as mismanagement or gross waste of funds." *Richest v. City of Kan. City*, 643 S.W.3d 610, 613 (Mo. App. 2022) (*quoting* Mo. Rev. Stat. § 105.055.3(1)(a)-(b)) (internal quotations omitted). A plaintiff bringing a claim under § 105.055 "shall show by clear and convincing evidence that he or she or a person acting on his or her behalf has reported or was about to report, verbally or in writing, a prohibited activity or a suspected prohibited activity." Mo. Rev. Stat. § 105.055.7(3). "Upon such a showing, the burden shall be on the public employer to demonstrate that the disciplinary action was not the result of such a report." Mo. Rev. Stat. § 105.055.7(3). Plaintiff's § 105.055 whistleblower claim fails as a matter of law because the District's disciplinary actions were not the result of any report by Plaintiff.

First, Plaintiff's reports were too remote in time to the District's disciplinary actions. "Disciplinary action is defined in the [Missouri whistleblower] statute as any dismissal, demotion, transfer, reassignment, suspension, reprimand, warning of possible dismissal or withholding of work, regardless of whether the withholding of work has affected or will affect the employee's compensation. *Richest*, 643 S.W.3d at 613 (*quoting* Mo. Rev. Stat. § 105.055.1(1)) (internal quotations omitted and modification added). The District did not dismiss, demote, transfer, reassign, suspend, reprimand, or take any other "disciplinary action" until December 27, 2022, when the Board voted unanimously to put Plaintiff on paid administrative leave. SUMF ¶ 49. The second and final disciplinary action took place on January 17, 2023, when the Board voted unanimously to terminate Plaintiff's employment. SUMF ¶ 57.

On the other hand, Plaintiff made his first report on October 17, 2017, when he filed his first complaint against Calhoun with the Board. SUMF ¶ 15. That was more than five years before the Board voted unanimously to put Plaintiff on paid administrative leave on December 27, 2022. SUMF ¶ 49. The Board's December 27, 2022 disciplinary action could not have been the result of

a complaint made five years earlier. The same can be said of Plaintiff's first Charge of Discrimination, which he filed with the EEOC on or about July 26, 2019, more than three years before the Board took any disciplinary action. SUMF ¶ 20. Three years is far too much time to support a retaliation claim. The final report made by Plaintiff was on August 29, 2022, when he filed his third Charge of Discrimination. SUMF ¶ 39. That report was made four months before the Board put Plaintiff on paid administrative leave. Even that four-month gap between Plaintiff's Charge and the suspension "so dilutes any inference of causation" that the Court must hold as a matter of law that there is no causal link. *Kipp v. Missouri Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) ("Here, the interval of two months between the complaint and Ms. Kipp's termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in Ms. Kipp's favor on the matter of causal link."); *see also Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) (two weeks between protected activity and disciplinary action is sufficient to establish causation, "but barely so"). Indeed, the law in this Circuit is that just two months between protected activity and disciplinary action does not prove causation. *See, e.g.*, *Kipp*, 280 F.3d at 897; *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1138 (8th Cir. 2006) ("We have held that an interval as brief as two months did not show causation for purposes of establishing a retaliation claim, and that a two-week interval was sufficient, but barely so."); *Recio v. Creighton Univ.*, 521 F.3d 934, 941 (8th Cir. 2008) (Six months "is not close enough to raise an inference of causation."); *Weger v. City of Ladue*, 500 F.3d 710, 727 (8th Cir. 2007) (four months between plaintiff's complaint and the disciplinary action did not prove causation); *Arnold v. St. Louis Metro. Police Dept. Bd. Of Police Comm'rs*, 2013 U.S. Dist. LEXIS 5498, *31 (E.D. Mo. 2013) ("The gap between [plaintiff's] complaint and her indefinite suspension (in December 2010) was almost ten months and does not

constitute a prima facie showing of a 'causal connection.'"). The shortest temporal gap between Plaintiff's reports and the Board's disciplinary actions is four months, and that is not enough to prove causation.[1]

Second, even if the timing is enough to create an inference of retaliation, Plaintiff's reports were disconnected from the Board's disciplinary decisions by intervening events that "independently justified adverse disciplinary action." *Gunderson v. BNSF Ry. Co.*, 850 F.3d 962, 969 (8th Cir. 2016) (*citing Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 348 (4th Cir. 2014), for the proposition that "causal connection may be severed by the passage of a significant amount of time, or by some legitimate intervening event."). In *Gunderson*, the plaintiff alleged he was terminated for "safety complaints and injury reporting," while the employer asserted plaintiff was terminated for harassing and intimidating co-workers. *See Gunderson*, 850 F.3d at 970. The Eighth Circuit Court of Appeals affirmed summary judgment dismissing plaintiff's retaliation claim because, among other things "[plaintiff's] prior safety-related activities were remote in time and disconnected from the disciplinary proceedings by an **intervening** event that independently justified adverse disciplinary action – union president Campen complaining to management that two members were being harassed." *Id.* at 969 (internal quotations omitted) (emphasis in the original); *see also Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 792 (8th Cir. 2014) (affirming summary judgment because "[plaintiff's] fouling of the tracks on June 9 was an intervening event that *independently* justified adverse employment action); *see also Loos v. BNSF Ry.*, 865 F.3d 1106, 1112-1113 (8th Cir. 2017) ("To determine whether the circumstances raise an inference of

---

[1] Plaintiff testified he made other "reports" regarding Calhoun and other alleged improper conduct by the Board after he made his first complaint and before he filed his final Charge of Discrimination. The temporal gap between any of those complaints and the first disciplinary action taken by the Board on December 27, 2022 is more than four months, so those reports do not prove causation.

40397365.v1

retaliatory motive in the absence of direct evidence, we consider circumstantial evidence such as the temporal proximity between the protected activity and the adverse action, indications of pretext such as inconsistent application of policies and shifting explanations, antagonism or hostility toward protected activity, the relation between the discipline and the protected activity, and the presence of intervening events that independently justify discharge.").

In this case, not only were Plaintiff's reports remote in time to the Board's disciplinary actions, those reports were disconnected from the Board's disciplinary actions by intervening events that independently justified the disciplinary actions. The first intervening event occurred when Plaintiff put a hidden camera in his office on or about August 21, 2022. SUMF ¶ 35. Smith was the first Director to learn about Plaintiff's secret recording device when Plaintiff showed him a video of Calhoun sometime in August 2022. SUMF ¶¶ 41-42. Schmalbeck did not find out about the videos or the recording device until September or October 2022, and Director Calhoun did not know about the secret camera until October 2022, when Addington Stewart, a resident of the community, called him. SUMF ¶¶ 44-46. The Board voted unanimously to put Plaintiff of paid administrative leave on December 27, 2022 in order to investigate that camera. SUMF ¶ 49. Plaintiff's decision to put a hidden camera in his office to record people without their knowledge or consent was an intervening event that independently justified the Board's decision to put Plaintiff on paid administrative leave.

When the Board voted to put Plaintiff on paid administrative leave, the Board delivered to Plaintiff a document titled "Cease and Desist to Chief Ankeneth 'Ken' Corbin and Order to Return Property and Administrative Suspension with Pay." SUMF ¶ 49. That Suspension Order required Plaintiff "to cease and desist from any further recording, intercepting, or endeavor to intercept, oral communications or capturing images and/or videos without the prior consent to such

40397365.v1

interception of an audio communication or images of other parties." SUMF ¶ 50. The Suspension Order also required Plaintiff to "turn over all District property in your possession including, but not limited to, the District cell phone or phones in your possession, any District laptop in your possession, or any other electronic device in your possession owned by the District." SUMF ¶ 53.

While Plaintiff was on suspension, Metro One Investigations Inc. performed a sweep of Plaintiff's office and the District building on December 29 and December 30, 2022. SUMF ¶ 55. That sweep revealed recording devices in Plaintiff's office, including an Olympus WS-852 digital voice recorder with a micro SD card was found on a cabinet behind a photograph, and a miniature black camera with a microphone was found on top of a cabinet behind a cup. SUMF ¶ 56.

On January 17, 2023, the Board voted unanimously to terminate Plaintiff's employment. SUMF ¶ 57. Calhoun voted to terminate Plaintiff's employment for two reasons: Plaintiff having a camera in his office, and the Board's belief Plaintiff did not hand over all of his electronic devices when asked to do so. SUMF ¶ 58. According to Smith, Plaintiff was terminated because he did not turn in all the equipment he had as he was instructed to do, and because he still had recording devices in his office after the Board asked him to remove them. SUMF ¶ 59. Smith testified Plaintiff was fired because he didn't follow the instructions. SUMF ¶ 59. Schmalbeck fired Plaintiff because he had a reduced level of trust in his actions. SUMF ¶ 60. Schmalbeck said there seemed to have been a reduction in Plaintiff's desire to give the Board information and keep them informed. SUMF ¶ 60.

In short, Plaintiff leaving additional recording devices in his office and failing to return all District property amounted to intervening events that independently justified the Board's unanimous decision to terminate Plaintiff's employment on January 17, 2023.

Plaintiff will argue the Board was wrong. Plaintiff will argue he returned all District equipment, and he will claim there is no rule that prohibited him from hiding cameras in his office. This is not enough to prove retaliation. This Court "[does] not sit as a super-personnel department that re-examines an employer's disciplinary decisions." *Kuduk*, 768 F.3d at 792 (*quoting Kipp*, 280 F.3d at 898 (internal quotations omitted)). The undisputed evidence proves the Board had legitimate and non-retaliatory reasons for their disciplinary actions. Plaintiff's contention, even if true, that the Board's decision is based on erroneous or inaccurate information is not enough to prove retaliation under the Missouri whistleblower statute. *See, e.g., Kuduk*, 768 F.3d at 792 ("In the absence of evidence connecting his protected activity to the discharge, Kuduk is not entitled to FRSA anti-retaliation relief even if BNSF inaccurately concluded that he committed one of the Eight Deadly Decisions by fouling the tracks."). Plaintiff has no evidence connecting his reports to his termination, so his retaliation claim fails even if the Board was wrong.

The undisputed evidence demonstrates that the District's disciplinary actions were not the result of any report made by Plaintiff, so Plaintiff's whistleblower claim under Mo. Rev. Stat. § 105.055(7)(3) fails as a matter of law.

C. **Plaintiff's 42 U.S.C. § 1983 Retaliation Claim (Count II) Fails Because Plaintiff Failed to Make a Prima Facie Case and Defendants Had Legitimate, Non-Discriminatory Reasons For The Disciplinary Actions.**

Plaintiff's § 1983 retaliation claim is analyzed under the *McDonnell Douglas* burden shifting analysis. *Clegg v. Arkansas Dep't of Corr.*, 496 F.3d 922, 928 (8th Cir. 2007). To make a prima facie case of § 1983 retaliation, plaintiff has to prove: "(1) he was engaged in a protected activity; (2) the defendant took official adverse action against him that would chill a person of ordinary firmness from continuing the activity; and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Johnson v. Payne*, 2023 U.S. Dist. LEXIS 215172,

*5 (E.D. Ark. Nov. 21, 2023) (*quoting Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013)) (internal quotations omitted); *De Rossitte v. Correct Care Solutions, LLC*, 22 F.4th 796, 804 (8th Cir. 2022). Plaintiff has failed make a prima facie case of § 1983 retaliation because he has no evidence to prove the Defendants' disciplinary actions were motivated by Plaintiff's protected activity.

"To survive summary judgment, a plaintiff must show that a reasonable jury could find that a retaliatory motive of the government official was a but-for cause of the adverse action, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Graham v. Barnette*, 5 F.4th 872, 889 (8th Cir. 2021) (*quoting Nieves v. Bartlett*, 587 U.S. ---, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019)) (internal quotations omitted). "To establish this connection, the plaintiffs must show that they were singled out because of their exercise of constitutional rights." *Bernini v. City of St. Paul*, 665 F.3d 997, 1007 (8th Cir. 2012) (internal quotations omitted). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Nieves*, 139 S. Ct. at 1722 (emphasis in the original). Plaintiff's § 1983 retaliation claim fails because there is no proof that the Board had a retaliatory motive or that the Board would not have suspended or terminated Plaintiff absent that retaliatory motive.

The theory of Plaintiff's retaliation claim is that the Board was upset by his repeated reports to the Board and the EEOC regarding Calhoun's conduct and alleged improper conduct by the Board. Plaintiff claims the Board put him on administrative leave and then terminated his employment because he made those reports. However, Plaintiff does not provide any direct evidence of a causal link between his disclosures and the Board's disciplinary actions. To the contrary, and as set forth above and in the Statement of Uncontroverted Material Facts, the Board

made the unanimous decision to put Plaintiff on paid administrative leave to investigate the hidden camera Plaintiff put in his office in August 2022, and then the Board made the unanimous decision to terminate Plaintiff's employment after finding other recording devices in his office and after Plaintiff failed to comply with an order requiring him to return all District equipment. SUMF ¶¶ 49, 52, 57-60.

Having no direct evidence of a nexus between his reports and the Board's disciplinary actions, Plaintiff rests his § 1983 retaliation claim on the temporal proximity between his third EEOC Charge of Discrimination filed on August 29, 2022 and the Board's decision to put him on administrate leave on December 27, 2022. While "temporal proximity between protected activity and an adverse employment action can constitute evidence the protected activity was a substantial or motivating factor", "temporary proximity, by itself, cannot show retaliatory motive." *Skalsky*, 772 F.3d at 1131 (*quoting Davison v. City of Minneapolis*, 490 F.3d 648, 657 (8th Cir. 2007), and *citing Kipp*, 280 F.3d at 897, and *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999)) (internal quotations omitted). Furthermore, and as discussed in detail above, the four month gap between Plaintiff's third Charge of Discrimination and the Board's decision to put Plaintiff on paid leave does not prove the requisite causal link. *See* discussion *supra* Section B, pp. 3-5.

Under these facts, no reasonable jury could find that the Board would not have put Plaintiff on paid administrative leave and then terminated his employment absent a retaliatory motive, and Plaintiff has failed to make a prima facie case of § 1983 retaliation.

Even if Plaintiff can make a prima facie case of retaliation, that claim still fails as a matter of law because Defendants had legitimate, non-discriminatory reasons for putting Plaintiff on paid administrative leave and subsequently terminating his employment, and there is no evidence of pretext. As discussed above, the legitimate, non-discriminatory reason why the Board voted

unanimously to put Plaintiff on paid administrative leave was to investigate the camera Plaintiff had put in his office. SUMF ¶¶ 48, 52; *see also* discussion *supra* Section B, pp. 5-8. The Board subsequently voted unanimously to terminate Plaintiff's employment. SUMF ¶ 57. Calhoun voted to terminate Plaintiff's employment because he had a camera in his office and the Board did not believe Plaintiff had returned all District property. SUMF ¶ 58. Smith voted to terminate Plaintiff's employment because he did not turn in all District equipment as he was instructed to do, and because he still had recording devices in his office. SUMF ¶ 59. Schmalbeck voted to terminate Plaintiff's employment because he had a reduced level of trust in his actions. SUMF ¶ 60. Schmalbeck said there seemed to have been a reduction in Plaintiff's desire to give the Board information and keep them informed. SUMF ¶ 60. The Board's testimony as to the legitimate, non-discriminatory reasons for their actions are enough to turn the burden back to Plaintiff to prove these reasons were pretextual. *See, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *see also Woods v. Circuit Attorney's Office of St. Louis*, 2020 U.S. Dist LEXIS 133401, *20 (E.D. Mo. 2020) (*citing Young*, 754 F.3d at 578).

Plaintiff cannot prove pretext. First, there is no evidence the District treated similarly-situated employees in a disparate manner. "At the pretext stage, the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1126 (8th Cir. 2017). The comparable employee "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* (*quoting Bone*, 686 F.3d at 956). Plaintiff has no proof that any other employee of the District engaged in the same conduct he did – installing a hidden camera to record people without notice or consent. Nor has Plaintiff come forward with evidence that any other employee engaged in violations "of comparable

seriousness." *See Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 487 (8th Cir. 1998) (*quoting Harvey v. Anheuser Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994)). There is no evidence in the record that any other District employee installed a hidden camera to record people or engaged in any other comparable conduct, so Plaintiff cannot prove pretext by way of comparator evidence.

Second, Plaintiff's denial of the facts that led to his suspension and termination does not prove pretext. In *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 637 (8th Cir. 2000), the Eighth Circuit considered a similar pretext argument based on the plaintiff's contention that she did not engage in the conduct that led to her discharge. *Stuart*, 217 F.3d at 636. The Court denied plaintiff's pretext argument. According to the Court, "denial of the facts upon which her termination was based, standing alone... is not evidence that [the employer]'s stated reason was a pretext." *Id.* According to the Court, "the veracity of the facts" is not the not the "core question in a retaliation case." *Id.* at 637. Instead, the core question in a retaliation case "concerns whether the employment decision was based upon intentional discrimination." *Id.* (*quoting Ryther v. KARE 11*, 108 F.3d 832, 837-38 (8th Cir. 1997) (internal quotations omitted)). The Court went on to affirm summary judgment because (1) there was no evidence showing the person who reported the events to the decisionmaker did not believe his report was accurate, and (2) there was no evidence showing the decisionmaker had any evidence showing that report was inaccurate. *Id.* So it is here. There is no dispute that Plaintiff put a hidden camera in his office to record Calhoun and others. The Board believed Plaintiff was not allowed to have a hidden camera in his office to record people without their knowledge or consent, and the Board believed Plaintiff had not returned all of District equipment as he was ordered. Plaintiff has not provided any evidence showing otherwise. Plaintiff

has therefore failed to produce sufficient evidence that could lead the jury to conclude the Defendants' reasons for the disciplinary actions were a pretext for retaliation.

For all of these reasons, Plaintiff's § 1983 retaliation claim fails as a matter of law.

**D.** **Plaintiff's Intentional Infliction of Emotional Distress Claim (Count III) Fails Because Calhoun's Conduct Was Not Extreme, Outrageous, or Intentional, and There is No Proof of Bodily Harm.**

The required elements of a claim for intentional infliction of emotional distress are: "(1) Defendant's conduct must be extreme and outrageous; (2) the defendant acts in an intentional or reckless manner; and (3) by reason of said acts, plaintiff is caused to suffer severe emotional distress from which bodily harm results." *La Brier v. Anheuser Ford, Inc.*, 612 S.W.2d 790, 793 (Mo. App. 1981); *see also Moon v. Portfolio Recovery Assocs.*, LLC, 2024 U.S. Dist. LEXIS 21397, *13 (E.D. Mo. Feb. 7, 2024) (*quoting Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 321 (Mo. App. 2010)). Plaintiff has failed to come forward with proof to satisfy any of the three required elements, so his intentional infliction of emotional distress claim fails as a matter of law.

First, Calhoun's conduct was neither extreme nor outrageous. The bar is high for extreme and outrageous conduct: "The conduct must have been so outrageous in character and so extreme in degree that it is beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized society." *Diehl*, 309 S.W.3d at 321-322. "Furthermore, the conduct must have been intended only to cause extreme emotional distress to the victim." *Id.* at 322. "Mere insults, indignities, inconsiderations or petty oppressions do not rise to the level of the outrageous conduct essential to plaintiff's right of recovery." *La Brier*, 612 S.W.2d at 793 (*quoting Smith v. Standard Oil, Division of Amoco Oil Company*, 567 S.W.2d 412, 416 (Mo. App. 1978)) (internal quotations omitted). "[G]enerally a case of outrageous conduct is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor,

and lead him to exclaim, 'Outrageous!'". *Id.* (quoting *Golston*, 573 S.W.2d at 705) (internal quotations omitted). The most that can be said of the evidence presented by Plaintiff is that Calhoun and Plaintiff did not get along. And while there is evidence that Plaintiff and Calhoun engaged in verbal altercations, there is no proof Calhoun engaged in conduct that any reasonable juror would consider extreme and outrageous.

Calhoun's conduct toward Plaintiff is readily distinguished from the extreme and outrageous conduct that courts have held sufficient to uphold damages for intentional infliction of emotional distress. In *La Brier*, for example, the Court of Appeals for the Eastern District of Missouri held: "We believe that the action of the employees of Anheuser Ford in appearing at plaintiff's residence in the presence of two neighbors and in a loud and threatening voice attempting to harass and humiliate plaintiff by repeatedly questioning her as to the whereabouts of her husband and the demonstrator automobile and threatening to have her husband arrested by the issuance of an 'all-points bulletin' to the police could be characterized as 'extreme and outrageous.'" *La Brier*, 612 S.W.2d at 793. Here, Plaintiff takes issue with Calhoun's conduct during a number of interactions, all of which occurred in the District fire house, and none of which involved Calhoun attempting to harass or humiliate Plaintiff at his home. There is simply no way any reasonable juror would consider Calhoun's conduct extreme or outrageous.

Second, Calhoun did not act intentionally or recklessly. Missouri courts have relied on the Restatement of Torts 2d to establish the following standard for intentional or reckless conduct: "The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of [severe emotional distress] to another, but also that such risk is substantially

greater than that which is necessary to make his conduct negligent." *See, e.g.*, *Golston v. Lincoln Cemetery, Inc.,* 573 S.W.2d 700, 705 (Mo. App. 1978). In this case, Plaintiff has not come forward with any evidence proving Calhoun knew or had reason to know that his conduct would cause severe emotional distress. This is a critical point, because the courts that have upheld awards for intentional infliction of emotional distress have done so based on the actor's prior knowledge of the plaintiff's prior condition. In *La Brier*, for example, the Court of Appeals affirmed damages for intentional infliction of emotional distress due to "the prior condition of plaintiff as a highly emotional and easily distraught individual who had suffered severe emotional problems before this episode that had caused her to be hospitalized, **a condition known to defendants** … ." *La Brier*, 612 S.W.2d at 793. In this case, there is no evidence Corbin knew or should have known Plaintiff had a prior condition that could have caused severe emotional distress.

Finally, Plaintiff has not produced any evidence that he suffers from severe emotional distress resulting in bodily harm. The record includes several notes from Plaintiff's treating mental health providers, but there is no evidence that Plaintiff suffers from any bodily harm resulting from any emotional distress. *See Smith v. City of Kan. City*, 2009 U.S. Dist. LEXIS 9623, * 18-19 (W.D. Mo. 2009) (granting summary judgment because "[p]laintiff has not provided evidence that any emotional distress he suffered resulted in bodily harm"). To the contrary, those notes indicate Plaintiff had trauma based post-traumatic stress syndrome relating to his work as a firefighter. The records make no mention of Calhoun, and there is no evidence Plaintiff suffered any related bodily harm.

For the foregoing reasons, Plaintiff's intentional infliction of emotional distress claim against Calhoun (Count III) fails as a matter of law.

40397365.v1

**E.** **Plaintiff's § 1983 Age Discrimination Claim (Count IV) Fails Because Plaintiff Failed to Make A Prima Facie Case and Defendants Had Legitimate, Non-Discriminatory Reasons for The Disciplinary Actions.**

Plaintiff's § 1983 age discrimination claim is subject to the *McDonnell Douglas* burden shifting analysis. *See, e.g.*, *Allen v. City of Pocahontas*, 340 F.3d 551, 557 (8th Cir. 2003) ("[Plaintiff's] claims of age and gender discrimination, whether sounding under the ADEA, Title VII or § 1983, all require the Court to engage in the familiar [*McDonnell Douglas*] burden shifting analysis.") (modifications added). "Pursuant to that analysis, the claimant must first proffer a prima facie case of discrimination; the burden then shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action; and then the burden shifts back to the employee to show that the proffered reason is merely a pretext for discrimination." *Id.* at 557-558. Plaintiff's § 1983 age discrimination claim fails as a matter of law because (1) Plaintiff cannot make a prima facie case of age discrimination, (2) Defendants had legitimate, non-discriminatory reasons for putting Plaintiff on paid administrative leave and subsequently terminating his employment, and (3) there is no evidence of pretext.

The four-part prima facie case of age discrimination is as follows: "(1) the plaintiff is over 40 years old; (2) the plaintiff met the applicable job qualifications; (3) the plaintiff suffered an adverse employment action; and (4) there is some additional evidence that age was a factor in the employer's termination decision." *Canning v. Creighton Univ.*, 995 F.3d 603, 611 (8th Cir. 2021) (internal quotations and citations omitted). Plaintiff has failed to make a prima facie case of age discrimination because he did not meet the applicable job qualifications and there is no additional evidence that age was a factor in the Board's employment decisions.

The undisputed evidence demonstrates Plaintiff was not meeting the District's expectations at the time he was suspended and terminated. *See Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d

639, 642 (8ᵗʰ Cir. 2008) (Plaintiff has to prove "he was meeting employer's reasonable expectations at the time of his termination."). Plaintiff admits he put a Wyze camera in his office on or about August 21, 2022. SUMF ¶ 35. After the Board members learned about that camera, the Board put Plaintiff on paid administrative leave to investigate the camera. SUMF ¶¶ 48, 49, 52. That is the only reason why Plaintiff was on disciplinary suspension. SUMF ¶ 52. This evidence proves Plaintiff was not meeting the District's expectations when he was suspended.

While Plaintiff was on suspension, Metro One Investigations Inc. performed a sweep of Plaintiff's office and the District building on December 29 and December 30, 2022. SUMF ¶ 55. That sweep discovered additional recording devices in Plaintiff's office. SUMF ¶¶ 56, 57. On January 17, 2023, the Board voted unanimously to terminate Plaintiff's employment. SUMF ¶ 57. Calhoun voted to terminate Plaintiff's employment for two reasons: Plaintiff having a camera in his office, and the Board's belief Plaintiff did not hand over all of his electronic devices when asked to do so. SUMF ¶ 58. According to Smith, Plaintiff was terminated because he did not turn in all the equipment he had as he was instructed to do, and because he still had recording devices in his office after the Board asked him to remove them. SUMF ¶ 59. Plaintiff was fired because he didn't follow the instructions. SUMF ¶ 59. Schmalbeck fired Plaintiff because he had a reduced level of trust in his actions. SUMF ¶ 60. Schmalbeck said there seemed to have been a reduction in Plaintiff's desire to give the Board information and keep them informed. SUMF ¶ 60. This undisputed evidence proves Plaintiff was not meeting the District's expectations at the time his employment was terminated. Plaintiff has not made a prima facie case of age discrimination because the undisputed evidence shows he was not meeting the District's expectations.

Plaintiff's prima facie case of age discrimination fails for the further reason that there is no additional evidence that age was a factor in the Board's employment decisions. The only

"evidence" Plaintiff has to support his age discrimination claim is that Calhoun would make comments and ask Plaintiff when he was retiring. SUMF ¶ 63. Calhoun's comments and questions about Plaintiff's retirement, without more, are not evidence of age discrimination. *See Holmes v. Marriott Corp.*, 831 F.Supp. 691, 707 (S.D. Iowa 1993) ("On the other hand, the statement contributed to Hal Cook asking about Holmes' retirement plans, without more, is not evidence of age discrimination and may not be relied upon by Holmes in attempting to prove age-based discrimination."). Plaintiff admits no one other than Calhoun made comments about his retirement. SUMF ¶¶ 64-65. And Plaintiff has not come forward with any other evidence of age discrimination, so Calhoun's comments about Plaintiff's retirement plans are not evidence of age discrimination.

Even if Plaintiff can make a prima facie case of age discrimination, that claim still fails as a matter of law because Defendants had legitimate, non-discriminatory reasons for putting Plaintiff on paid administrative leave and subsequently terminating his employment, and there is no evidence of pretext. *See* discussion *supra* Section C, pp. 11-12.

For all of these reasons, Plaintiff's § 1983 age discrimination claim fails as a matter of law.

**F.    Plaintiff's § 1981 Retaliation Claim (Count V) Fails Because Plaintiff Did Not Complain About Contract-Related Rights, Plaintiff Failed to Make A Prima Facie Case, and Defendants Had Legitimate, Non-Discriminatory Reasons for The Disciplinary Actions.**

Section 1981 protects a person's right to make and enforce contracts regardless of his race or alienage. *See Davenport v. Bd. of Trs. of the Univ. of Ark.*, 2011 U.S. Dist LEXIS 25707, *7 (E.D. Ark. March 14, 2011) (*citing* 42 U.S.C. § 1981 (2006)). Section 1981 encompasses claims for retaliation in the employment context, but only where there "is an allegation of reprisal against a person who has complained about a violation of his or another person's contract-related right." *See Davenport*, 2011 U.S. Dist. LEXIS 25707, *7 (*citing CBOCS West, Inc. v. Humphries,* 553

U.S. 442, 457, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008)). Plaintiff's complaints, reports, disclosures, and EEOC charges did not specifically address the rights and duties imposed by an employment contract. Instead, Plaintiff's reports related to Calhoun's conduct and alleged improprieties on the part of the Board. Accordingly, Plaintiff's allegations do not state a retaliation claim under § 1981, and Defendants are entitled to summary judgment. *See Davenport*, 2011 U.S. Dist. LEXIS 25707 at *8-9 (dismissing plaintiff's section 1981 retaliation claim because plaintiff's "verbal complaints, written grievances, and 2005 lawsuit did not specifically address the rights and duties imposed by an employment contract, but rather concerned the University's failure to promote him because of his First Amendment activities.").

To the extent Plaintiff can state a claim for § 1981 retaliation, that claim is subject to the same *McDonnell Douglas* analysis that applies to his § 1983 retaliation claim. *See Ellis v. Houston*, 742 F.3d 307, 318-319 (8th Cir. 2014). And just as Plaintiff's § 1981 retaliation claim fails under the McDonnell Douglas analysis, so too does Plaintiff's § 1983 retaliation claim. *See* discussion *supra* Section C, pp. 8-14.

For these reasons, Plaintiff's § 1981 retaliation claim fails as a matter of law and Defendants are entitled to summary judgment.

G. **Plaintiff's 42 U.S.C. §§ 1981 and 1983 Race Discrimination Claim (Count VI) Fails Because Plaintiff Failed to Make a Prima Facie Case and Defendants Had Legitimate, Non-Discriminatory Reasons For The Disciplinary Actions.**

"A plaintiff bringing a [§ 1981 or 1983] race discrimination claim may prove his case by providing direct evidence of discrimination or by creating an inference of unlawful discrimination through the McDonnell Douglas analysis." *Burton v. Martin*, 737 F.3d 1219, 1229 (8th Cir. 2013) (quoting *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012) (internal quotations omitted); *see also Woods v. Circuit Attorney's Office of St. Louis*, 2020 U.S. Dist. LEXIS 133401,

*17 (E.D. Mo. July 28, 2020) ("The McDonnell Douglas framework applies equally to [plaintiff's] race discrimination claims under Title VII, 42 U.S.C. § 1983, 42 U.S.C. § 1981, and the MHRA"). Plaintiff has not presented any direct evidence of race discrimination, so he has to prove an inference of discrimination through the McDonnell Douglas analysis.

Under the McDonnell Douglas burden-shifting analysis, Plaintiff must first establish a prima facie case of race discrimination. *See Woods*, 2020 U.S. Dist. LEXIS 133401, * 17 (*citing McDonnell Douglas Corp.*, 411 U.S. at 802). If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). "This is a burden of production, not persuasion, and it requires no credibility assessment." *Hudson v. United Sys. Of Ark.*, 709 F.3d 700, 704 (8th Cir. 2013) (internal quotations omitted). "If an employee carries its burden, the legal presumption of unlawful discrimination drops out of the picture." *Id.* (*quoting Ryther v. Kare 11*, 108 F.3d 832, 836 (8th Cir. 1997) (en banc) (emphasis in the original) (internal quotations omitted). The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for race discrimination. *See Woods*, 2020 U.S. Dist. LEXIS 133401 at *18 (*citing Young*, 754 F.3d at 578). Plaintiff's race discrimination claims fail as a matter of law for at least two reasons: (1) Plaintiff cannot make a prima facie case of race; and (2) even if Plaintiff can make a prima facie case of race discrimination, Defendants have put forth legitimate, non-discriminatory reasons for Plaintiff's suspension and termination and Plaintiff cannot prove pretext.

To establish a prima facie case of race discrimination, Plaintiff must prove (1) he is a member of a protected class, (2) he met the District's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination.

*See Woods*, 2020 U.S. Dist. LEXIS 133401 at *18 (*citing Young*, 754 F.3d at 577). Plaintiff's prima facie case of race discrimination fails because (1) Plaintiff was not meeting the District's legitimate expectations, and (2) the circumstances do not give rise to an inference of discrimination.

As set forth in more detail above, Plaintiff was not meeting the District's reasonable expectations at the time he was suspended because he had put a hidden camera in his office to record people without their knowledge or consent. *See* discussion *supra* Section E, pp. 16-17. Plaintiff was not meeting the District's reasonable expectations at the time of his termination either because he had not returned all District owned equipment as he was ordered to and because he still had a recording device in his office. *See* discussion *supra* Section E, pp. 17-18. Plaintiff's prima facie case of race discrimination fails as a matter of law because he was not meeting the District's expectations at the time of suspension and termination.

Plaintiff's prima facie case of race discrimination fails for the further reason that the circumstances do not give rise to an inference of discrimination. As an initial matter, two of the three members of the Board are African American. SUMF ¶¶ 69, 72. This makes it more difficult for Plaintiff to prove a discriminatory animus played a role in the Board's decisions. *See Lewis v. McDonough*, 2024 U.S. Dist. LEXIS 27236, * 15-16 (W.D. Mo. 2024); *see also Askari v. L.A. Fitness Int'l*, LLC, 2010 U.S. Dist. LEXIS 107165, *14 (D. Minn. 2010) ("In addition, although members of a protected class may sometimes discriminate against other members in that class, … a plaintiff faces a difficult burden of establishing discrimination when the decision-maker is a member of the same protected class as the plaintiff.") (internal citations omitted). Moreover, Plaintiff has no evidence that any of the three Board members who made the decision to suspend

and then terminate Plaintiff made any comments about Plaintiff's race. SUMF ¶¶ 67-73. Simply put, Plaintiff has not come forward with any evidence proving an inference of race discrimination.

Even if Plaintiff can make a prima facie case of age discrimination, that claim still fails as a matter of law because Defendants had legitimate, non-discriminatory reasons for putting Plaintiff on paid administrative leave and subsequently terminating his employment, and there is no evidence of pretext. *See* discussion *supra* Section C, pp. 11-14.

For these reasons, Plaintiff's §§ 1981 and 1983 race discrimination claims fail as a matter of law.

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted and Plaintiff's claims should be dismissed with prejudice.

Respectfully submitted,

**GOLDBERG SEGALLA, LLP**

By:     /s/ John M. Allen
John M. Allen, #49642
P.O. Box 1017
Buffalo, NY 14201
Telephone:  314-446-3370
Facsimile:  314-446-3360
jallen@goldbergsegalla.com

*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was served via this Court's electronic mail system upon all counsel of record this 8th day of May, 2024.

/s/ John M. Allen

40397365.v1