# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| ANKENETH CORBIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23CV516 JAR |
| | ) | |
| BLACK JACK FIRE PROTECTION | ) | |
| DISTRICT, *et al*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motion for summary judgment in this employment discrimination case [ECF No. 28]. For the reasons set forth below, the motion will be granted in part and denied in part.

**I.     Background**

The following facts are taken from Defendants' Statement of Uncontroverted Material Facts [ECF No. 31] and Plaintiff's Statement of Additional Uncontroverted Material Facts [ECF No. 43], unless otherwise noted:

Plaintiff Ankeneth Corbin, who is African American, served as Fire Chief in an at-will position for Defendant Black Jack Fire Protection District (the "District"), a public entity, from 2015 until his termination in January 2023. He was first hired as Assistant Fire Chief in 2010 and was promoted by a unanimous vote of the District's Board of Directors (the "Board"), then comprised of David Calhoun, Randy Adler, and Kenneth Schmalbeck. Adler was later replaced by Orlando Smith in 2019.

At the time of his promotion to Fire Chief in 2015, Corbin was in his early fifties. The Board maintained a mandatory retirement age of 60, which Corbin would reach in August 2024. Though the Fire Chief who served before Corbin retired at 60, the Board had the authority to make exceptions and had done so once in the 1990s.

In October 2017, Corbin lodged his first complaint against Calhoun with the Board alleging that Calhoun continuously used "threatening, intimidating and abusive language" toward Corbin. [ECF No. 48 at 89.] In July 2019, Corbin filed a charge of discrimination with the Missouri Commission on Human Rights, alleging that, in 2018, the Board denied a training request he had submitted on account of his race. Calhoun became aware of that charge in 2019.

In the following years, Calhoun, who was chairman of the Board, would ask Corbin when he intended to retire. No one else asked Corbin directly when he was retiring. According to District Battalion Chief Dave Schmidt, however, the District's counsel stated in 2021 that the Board would never change the retirement age while Corbin was Fire Chief. [ECF No. 50-4 at 2.]

According to Corbin, Calhoun thought Corbin was trying to get Calhoun ousted from the Board. During a confrontation in March 2022, Calhoun said to Corbin "You can't do nothing to me … Go write your letter." [ECF No. 50-1 at 29.] Calhoun later recounted that he thought Corbin "was trying to get me ran out of the place." [*Id.*]

In July 2022, Corbin filed a charge of discrimination with the EEOC asserting claims of retaliation and discrimination due to race, color, and age. Corbin alleged, in part, "I was retaliated against for speaking out against the chairman and the board for making policy and procedures modifications for a single individual, reporting conflicts of interest, fiscal

2

irregularities and wasteful spending. These actions taken against me are in violation of the WPA whistleblower protection act." [ECF No. 31-8 at 1.]

Calhoun believed that Corbin was going to go to the media about allegations against the Board. [ECF No. 50-1 at 12-13.] According to Schmidt, Calhoun made efforts to get the District's union to issue a vote of "no confidence" on Corbin to have him removed as Fire Chief. [ECF No. 43-4 at 3-4.] Calhoun denied that he made such efforts. [ECF No. 50-1 at 11.] Schmidt also testified that Calhoun showed him and others Corbin's EEOC charge. [ECF No. 43-4 at 4-6.] Calhoun denied that he showed the charge to anyone. [ECF No. 50-1 at 10.] However, Calhoun admitted that he told Schmidt that Corbin was going to "destroy the department" because of "harassment like the charges." [ECF No. 50-1 at 13.]

On or about August 21, 2022, Corbin placed a hidden camera in his office for the purpose of finding out who was moving and removing items and "for protection." [ECF No. 48 at 28.] Corbin's office housed other mailboxes, including for the directors on the Board. It was not unusual for a director to enter Corbin's office to retrieve mail. Shortly after installing the camera, Corbin shared with one of the directors, Orlando Smith, a video of Calhoun in Corbin's office and an audio recording of Corbin and Calhoun arguing. Smith stated he was "shocked" that the video appeared to show Calhoun rifling through papers. [ECF No. 50-3 at 5-6.] Calhoun admitted he was in Corbin's office but denied rifling through drawers. [ECF No. 50-1 at 21.] The video does not show Calhoun taking anything. Smith did not report Corbin's recordings to the other directors and did not initially see a need for disciplinary action. [ECF No. 50-3 at 7-8.]

On August 29, 2022, Corbin amended his EEOC charge to directly implicate Calhoun. The charge alleged, in part, "Mr. Calhoun has been showing various employees my original

3

charge at the station, petitioning firefighters to file a vote of no confidence against me to get me fired. Mr. Calhoun has also falsely alleged that I was going to destroy the department and go to the media concerning these matters." [ECF No. 31-9 at 1.]

In September or October 2022, Corbin showed another director, Kenneth Schmalbeck, images of Calhoun in his office. Initially, Schmalbeck was not concerned about things being recorded in the office. [ECF No. 50-2 at 12-13.] Calhoun himself became aware that Corbin had a camera in his office in October 2022.

In early December 2022, the Board met with Corbin to discuss the camera. After that meeting, Schmalbeck proposed that the Board suspend Corbin. On December 27, 2022, the Board voted unanimously to place Corbin on paid administrative leave. The suspension order required Corbin to "cease and desist from any further recording, intercepting, or endeavor to intercept, oral communications or capturing images and/or videos without the prior consent to such interception of an audio communication or images of other parties." [ECF No. 48 at 108.] The order also required Corbin to "turn over all District property in your possession including, but not limited to, the District cell phone or phones in your possession, any District laptop in your possession, or any other electronic device in your possession owned by the District." [*Id.*]

Corbin claims that he returned all items or left them in his office. Calhoun, however, claims that there was at least one cell phone that Corbin did not return. [ECF No. 50-1 at 26.] Smith and Schmalbeck likewise believe that Corbin did not turn in all the equipment as instructed. [ECF No. 50-3 at 12; ECF. No. 50-2 at 6.]

Following the suspension, a private investigative company performed a sweep of Corbin's office and the District building. That sweep revealed two recording devices in Corbin's

4

office. A voice recorder was found on a cabinet behind a photograph, and a miniature black camera with a microphone was found on top of a cabinet behind a cup. [ECF No. 48 at 111.]

On January 17, 2023, the Board voted unanimously to terminate Corbin's employment. Calhoun testified that he voted to terminate Corbin's employment because Corbin had a hidden camera in his office and failed to return all electronic devices as directed. Smith testified that Corbin was terminated because he did not return all equipment and kept recording devices in his office after the Board asked him to remove them. Schmalbeck testified that he voted to fire Corbin because of his diminished trust in Corbin's actions and an apparent reduced desire on Corbin's part to keep the Board informed.

There was no known rule prohibiting cameras in the workplace. [ECF. No. 50-3 at 9; ECF. No. 43-4 at 9.] Schmalbeck stated, however, "There's no objection to having a camera in the office, it's the use thereof that could cause a problem…. The fact was it was recording people in [Corbin's] office without him or they knowing about it." [ECF. No. 50-2 at 9.]

During Calhoun's time on the Board, Corbin's was the only termination the Board was involved in, and Calhoun was not involved in other disciplinary matters. No other employees had duties comparable to Corbin.

On February 14, 2023, Corbin filed a petition against the District and Calhoun in the 21st Judicial Circuit of Missouri (St. Louis County), asserting claims of retaliation and illegal discharge in violation of Mo. Rev. Stat. § 105.055 against the District (Count I); retaliation against First Amendment protected activity and in violation of the Fourteenth Amendment protections of equal protection and due process under the U.S. Constitution / 42 U.S.C. § 1983 against both Defendants (Count II); intentional infliction of emotional distress against Calhoun

5

(Count III); age discrimination in violation of 42 U.S.C. § 1983 against both Defendants (Count IV); retaliation in violation of 42 U.S.C. § 1981 against both Defendants (Count V); and race discrimination in violation of 42 U.S.C. § 1981 and § 1983 against both Defendants (Count VI). Defendants timely removed the case to this Court.

Defendants now move for summary judgment on the entirety of the complaint. In his response to the motion, Corbin voluntarily dismissed Counts III and VI.

## II.     Summary Judgment Standard

"Summary judgment is proper where the evidence, when viewed in the light most favorable to the nonmoving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Spears v. Missouri Dept. of Corrections and Human Resources*, 210 F.3d 850, 853 (8th Cir. 2000); Fed. R. Civ. P. 56(a). If there are factual disputes that may affect the outcome of the case under the applicable substantive law, summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it relates to the legal elements of the claim. *Id.* A dispute of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.* "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252.

The non-moving party may not rely on allegations or denials but must substantiate its allegations with sufficient probative evidence that would permit a finding in its favor on more than mere speculation or conjecture. *Ball v. City of Lincoln, Nebraska*, 870 F.3d 722, 727 (8th Cir. 2017). Even if some factual dispute exists, if the evidence, taken as a whole, is so one-sided

6

that a fair-minded trier of fact could not find for the non-moving party, then there is no genuine issue for trial, and the movant is entitled to summary judgment. *Id*.

### III. Discussion

#### A. State law retaliation and illegal discharge (Count I)

Missouri Revised Statute § 105.055 "protects public employees by prohibiting any supervisor or appointing authority of any public employer from taking 'any disciplinary action whatsoever against a public employee for the disclosure of ... information which the employee reasonably believes evidences' a violation of any law, rule, or regulation, or other wrongful activity, such as mismanagement or gross waste of funds." *Richest v. City of Kansas City*, 643 S.W.3d 610, 613 (Mo. App. W.D. 2022) (quoting § 105.055.3(1)). To prove a claim under § 105.055, a public employee "shall show by clear and convincing evidence that he or she or a person acting on his or her behalf has reported or was about to report, verbally or in writing, a prohibited activity or a suspected prohibited activity." § 105.055.7(3). If the employee makes such a showing, the burden shifts to the employer "to demonstrate that the disciplinary action was not the result of such a report." *Id*. "Simply put, a public employer cannot retaliate against a public employee for reporting certain types of wrongdoing." *Richest*, 643 S.W.3d at 613.

The parties do not dispute that the District is a public employer. The District argues that the EEOC charges were too remote in time to show causation, and the actual reason for Corbin's termination was his use of the hidden camera and failure to return all electronic devices. In response, Corbin contends that the evidence gives rise to jury questions. The Court agrees.

Calhoun admitted he said to Corbin in March 2022, "You can't do nothing to me" and "[g]o write your letter" as he thought Corbin "was trying to get me ran out of the place." Corbin

7

filed EEOC charges in July and late August 2022, claiming retaliation for reporting alleged "conflicts of interest, fiscal irregularities and wasteful spending" by the Board and other specific retaliatory actions by Calhoun. Calhoun admitted stating that Corbin was going to "destroy the department" because of "harassment like the charges." Calhoun further admitted that he believed Corbin was going to alert the media about allegations against the Board. Tensions escalated into the fall of 2022 and Corbin recorded Calhoun in his office via video and their arguments via audio. Corbin was suspended that December and terminated the following month. This timeline is not so remote as to remove the question of causation from the province of the jury. Rather, the timeline and conflicting evidence give rise to a genuine material dispute as to whether the Board cited Corbin's recordings and alleged failure to return devices as a pretext to fire a troublesome whistleblower. These are fact questions for a jury to resolve. Accordingly, the Court will deny the District's motion for summary judgment as to Count I.

### B. First Amendment retaliation in violation of 42 U.S.C. § 1983 (Count II)[1]

The First Amendment restrains a government employer from retaliating against a public employee based on the employee's speech or associations. *Wingate v. Gage County Sch. Dist.*,

---

[1] Corbin also characterizes this claim as a violation of Fourteenth Amendment protections of equal protection and due process. However, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation omitted). *See also Cornell v. Woods*, 69 F.3d 1383, 1387-90 (8th Cir. 1995) (analyzing claim of retaliatory discipline exclusively under the First Amendment); *Palmore v. City of Pac.*, 851 F. Supp. 2d 1162, 1168 (E.D. Mo. 2010) ("If plaintiff were truly asserting separate § 1983 claims for violation of his due process rights, violation of his equal protection rights, and First Amendment retaliation, then such claims should have been set out in separate counts. The inartful pleading of Count II unfortunately muddies the waters in which plaintiff is asserting a constitutional claim."). Therefore, this claim will be analyzed exclusively under the First Amendment.

*No. 34*, 528 F.3d 1074, 1080–81 (8th Cir. 2008). To avoid summary judgment, the plaintiff must either present direct evidence of retaliation or follow the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Direct evidence must be strong enough to show a specific link between the alleged discriminatory animus and the challenged decision sufficient to support a finding that an illegitimate criterion motivated the employment decision. *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 965 (8th Cir. 2006).

Here, the record arguably contains direct evidence showing a discriminatory animus behind the Board's decision to suspend and then terminate Corbin's employment. As discussed above, Calhoun admitted in the summer of 2022 that he was concerned that Corbin would alert the press of alleged misconduct by Board members and that he considered Corbin's EEOC charges to be a form of harassment that would destroy the department. Although Corbin was not suspended until some months later, and purportedly for other reasons, a jury could interpret Calhoun's statements as direct evidence of a discriminatory animus that ultimately prompted the Board's action. Alternatively, even accepting that developments in the fall of 2022, specifically Corbin's recordings and alleged failure to return devices, could be viewed to interrupt any direct link between Calhoun's animus and Corbin's termination, the evidence gives rise to genuine factual dispute under the *McDonnell Douglas* burden-shifting framework.

Applying that framework, the plaintiff must set forth a prima facie case to shift the burden of producing a legitimate, non-retaliatory reason for the employment decision to the employer. *Williams v. Tucker*, 857 F.3d 765, 768 (8th Cir. 2017). To establish a prima facie case of First Amendment retaliation, the plaintiff must show that: (1) he engaged in activity protected

by the First Amendment; (2) the defendant took an adverse employment action against him; and (3) the protected conduct was a substantial or motivating factor in the defendant's decision to take the adverse employment action. *Wilson v. Miller*, 821 F.3d 963, 967–68 (8th Cir. 2016).

Whether the protected activity was a substantial or motivating factor in an employment decision is a question of fact, but the sufficiency of the evidence to create an issue of fact for the jury is a question of law. *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008). At this stage, the plaintiff does not need to plead facts showing that his speech was a "but for" cause of his termination; that would put the plaintiff to a heightened burden of proof prematurely. Rather, the plaintiff is required only to plead sufficient facts to support the allegation that his speech was a substantial or motivating factor. *Agnew v. St. Louis Cnty.*, 504 F.Supp.3d 989, 1000 (E.D. Mo. 2020).

Here, Corbin's activity in filing the EEOC charges was protected by the First Amendment. *See Tyler v. Univ. of Arkansas Bd. of Trustees*, 628 F.3d 980, 986 (8th Cir. 2011). And clearly Corbin's termination was an adverse employment action. *See e.g., Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 502 (8th Cir. 2005).

The question thus turns to whether there is sufficient evidence to create an issue of fact for the jury whether Corbin's protected conduct was a substantial or motivating factor in the Board's decision to terminate him. As Defendants correctly note, "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999). And "[m]ore than two months is too long to support a finding of

10

causation without something more." *Sisk v. Picture People, Inc.*, 669 F.3d 896, 901 (8th Cir. 2012).

In contrast to *Sisk*, however, the record in this case contains "something more" which cures any lack of temporal proximity. Again, Calhoun's statements reflect a possible motive. Additionally, two of the Board's three directors were aware of Corbin's camera months prior to his suspension and did not initially see it as warranting discipline, as there was no known rule against it. The parties dispute whether Corbin did or did not return all electronic equipment upon his suspension and whether Calhoun tried to persuade the District's union to issue a vote of "no confidence" to have Corbin removed. Viewed as a whole, these facts are sufficient to give rise to a jury question as to the legitimacy of Defendants' motive. Corbin has thus established a prima facie case of First Amendment retaliation.

The burden then shifts to the employer to "show a legitimate, nondiscriminatory reason for [its] actions." *Morris*, 512 F.3d at 1019. Here, Defendants have provided sufficient evidence to show that the discovery of the camera and the Corbin's alleged failure to return additional electronic devices may have been a legitimate, nondiscriminatory basis for the adverse action.

With the employer's burden met, the burden shifts back to Corbin to show that Defendants' actions were a "pretext for the retaliation." *Daly v. City of De Soto, Missouri*, 691 F.Supp.3d 1023, 1029 (E.D. Mo. 2023). Proof of pretext requires more substantial evidence than a prima facie case because it is viewed in light of the employer's justification. *Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015). "There are at least two routes for demonstrating a material question of fact as to pretext: first, a plaintiff may succeed indirectly by showing the proffered explanation has no basis in fact; or, second, a plaintiff can directly persuade the court

11

that a prohibited reason more likely motivated the employer." *Id.* (internal citation omitted). "An employee may show pretext through various means, such as by presenting evidence that the employer treated similarly-situated employees in a favorable manner, did not follow its own policies, 'shifted its explanation of the employment decision,' or by showing evidence of a decision maker's biased comments." *Lightner v. Catalent CTS (Kansas City), LLC*, 89 F.4th 648, 653 (8th Cir. 2023) (quoting *Grant v. City of Blytheville*, 841 F.3d 767, 774 (8th Cir. 2016)).

Here, as previously discussed, Calhoun's numerous biased comments reflect hostility toward Corbin for attempting to expose Board misconduct and for filing EEOC charges. Even in light of Defendants' justification, Corbin has produced sufficient evidence that a reasonable jury could conclude that his protected conduct more likely motivated Defendants' adverse action.

The Court will deny Defendants' motion for summary judgment as to Count II.

### C.  Age discrimination in violation of 42 U.S.C. § 1983 (Count IV)

To establish a prima facie case of age discrimination,[2] the plaintiff must show that: (1) he was at least 40 years old; (2) he met the applicable job qualifications; (3) he suffered an adverse employment action; and (4) there is some additional evidence that age was a factor in the employer's termination decision. *Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 800 (8th Cir. 2014).

Here, the only evidence in the record shows that Calhoun asked Corbin when he intended to retire, and that the District's counsel indicated in 2021 that the Board would not change the retirement age as long as Corbin was Fire Chief. In the Court's view, this is insufficient to

---

[2] It is unclear whether an age discrimination claim can be brought pursuant to § 1983 or whether all such claims must be brought pursuant to the ADEA. *See, e.g., Allen v. City of Pocahontas, Ark.,* 340 F.3d 551, 557 n.4 (8th Cir. 2003). The Court need not resolve that issue here.

establish a prima facie case. First, "reasonable inquiries into an employee's retirement plans do not permit an inference of age discrimination." *Betz v. Chertoff*, 578 F.3d 929, 934 (8th Cir. 2009) (internal quotation marks and citation omitted). Further, the alleged statement by the District's counsel occurred long before Corbin's suspension and termination, and a "single remark by a non-decisionmaker fails to constitute direct evidence" of age discrimination. *Crumm v. Oce'-Bruning*, 892 F.Supp. 1236, 1242 (E.D. Mo. 1995) (citing *Stacks v. Southwestern Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1323 (8th Cir.1994)). The evidence is insufficient to raise a genuine issue of material fact on this claim. Defendants are entitled to summary judgment on Count IV.

### D. Retaliation in violation of 42 U.S.C. § 1981 (Count V)

"The Eighth Circuit consistently has held that an at-will employee may maintain a claim under § 1981 for racially discriminatory employment actions." *Sewell v. Vatterott Educ. Centers, Inc.*, No. 4:10CV00875 AGF, 2011 WL 2838112 (E.D. Mo. July 18, 2011) (citing *Turner v. Arkansas Ins. Dept.*, 297 F.3d 751, 759 (8th Cir. 2002); *Skinner v. Maritz, Inc.*, 253 F.3d 337, 339 (8th Cir. 2001)). Further, "an at-will employee, employed without a written contract in an agreement terminable at will by either party, has a 'contract' within the meaning of civil rights statute guaranteeing equal rights to make and enforce contracts." *Singletary v. Missouri Dept. of Corr.*, 423 F.3d 886, 890 n.3 (8th Cir. 2005) (citing *Skinner*, 253 F.3d at 339 (8th Cir. 2001). *See also Turner*, 297 F.3d at 759 (8th Cir. 2002) (concluding that it is "clearly established" that at-will employees are permitted to file a claim for employment discrimination under § 1981). The parties do not dispute that Corbin was an at-will employee of the District until his termination in January 2023.

The *McDonnell Douglas* burden-shifting framework applies to § 1981 retaliation claims. *See Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873 n.2 (8th Cir. 2010). The remainder of the analysis here thus mirrors that of Corbin's § 1983 retaliation claim. For the same reasons discussed above with respect to Count II, the Court finds the evidence in the record sufficient to give rise to jury questions as to whether Corbin's protected activities were a substantial or motivating factor in his termination and whether Defendants' stated reasons for firing him were pretextual. Defendants' motion for summary judgment as to Count V will be denied.

**IV.    Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [ECF No. 28] is **GRANTED in part** and **DENIED in part.** The motion is **GRANTED** as to Count IV. The motion is **DENIED** as to Counts I, II, and V.

As reflected in Plaintiff's memorandum in opposition to Defendants' motion for summary judgment [ECF No. 42], Plaintiff voluntarily dismissed Counts III and VI.

Dated this 18th day of December, 2024.

                                                   _____
                                                   JOHN A. ROSS
                                                   UNITED STATES DISTRICT JUDGE